## BLOOM SONS v. AMERICUS GROCERY COMPANY.

1. There was no variance between the allegata and the probata.

2. The measure of damages recoverable of a vendor for failure to deliver goods sold being the difference between the contract price and the market value at the time and place for delivery, it follows that where a vendee, upon the trial of an action against his vendor for such damages, failed to submit any evidence as to the market price at the time for delivery, no actual damages could be recovered.

3. Where under the evidence the plaintiff is entitled to recover nominal damages, it is erroneous to grant a nonsuit.

Submitted November 24, — Decided December 12, 1902.

Action for breach of contract. Before Judge Crisp. City court of Americus. May 15, 1902.

*W. A. Dodson,* for plaintiff.    *Shipp & Sheppard,* for defendant.

FISH, J.    Bloom Sons brought an action against the Americus Grocery Company for damages, for the failure by the defendant to deliver a certain quantity of peas which the plaintiff had purchased

of it. The contract was evidenced by a correspondence between the parties, and can be sufficiently understood from the following letters:

"Americus, Ga., Apr. 2, 1901.

"Messrs. Bloom & Sons, New Orleans, La.

"Gentlemen: Replying to your telegram of the first, will say we did not answer from the fact that we have these pease in a dozen different little towns right around here, and don't know how long it will take to get them up for you. Please let us know, on receipt of this, when you would expect shipment of the pease, as a lot of the little country merchants are very hard to get prompt shipment. Unless you could give us a reasonable length of time to get them, we would not care to bind ourselves for a car; so kindly let us know your views in the matter, and we will answer you at once, declining or confirming the order.

"Yours truly, Americus Gro. Co."

"New Orleans, La., April 4th, 1901.

"Americus Gro. Co., Americus, Ga.

"Dear Sirs: Replying to yours of the 2nd, we think rates carload or less are the same, viz., 24 cents a 100; and if this is the case, you can go ahead and ship them right along; but if you are forced to have a car in order to get the rate of 24 cts., we will allow you 20 days to ship them. Advise us as soon as you get this if all is O. K., or just what you do; as we are purchasing a good many, and want to know just where we stand.

"Respt. Bloom Sons."

"Americus, Ga., April 5th, 1901.

"Messrs. Bloom & Sons, New Orleans, La.

"Gentlemen: We accept your offer for carload of pease at $1.17–2 f. o. b. here, and will begin shipping same to you just as soon as they arrive. Will ship you approximately 100 bushels Monday, and, as fast as they arrive, will ship you all we get not exceeding 500 bushels; if this does not meet with your approval, wire us on receipt of this, as we will possibly ship you one lot Monday and ship in about same size lots until same is completed.

"Yours truly, Americus Grocery Company."

Albert Bloom, on behalf of the plaintiffs, testified as follows: "That he remembered the transaction between Bloom Sons and the

Americus Grocery Co.   That there was delivered to Bloom Sons 15689 lbs. of pease, and that the Americus Grocery Co. failed to furnish 14311 lbs. or in the neighborhood of 238 bushels.   That, on account of the Americus Grocery Co. not furnishing the pease, plaintiffs had to go out in the City of New Orleans and buy the pease, paying for them at open market 1.97 – 2 per bushel; and that Bloom Sons had to pay $156.40 more for the pease purchased by them than the contract price from the Americus Grocery Co."  The bill of exceptions recites that "Defendants in their plea admitted that they did sell plaintiffs some pease f. o. b. Americus, and the Americus Grocery Co. sent a draft with bill of lading attached for the pease shipped, drawn on plaintiffs for the amount of the pease shipped, the title to the pease going with the bill of lading."   Upon this evidence, the court granted a nonsuit, and the case was brought here upon a bill of exceptions sued out by the plaintiffs.

1. It is contended by counsel for defendant in error that the grant of a nonsuit was proper, because there was a fatal variance between the contract set out in the petition and the one proved, in that, under the former, the peas were to be delivered at Americus, while under the latter they were to be delivered at New Orleans. We do not think there is any merit in this contention.   If it be granted that the contract set out in the petition, legally construed, meant that the peas should be delivered in Americus, this was certainly not the construction placed upon it by the parties thereto. The Americus Grocery Company admitted, in effect, that it delivered to the railroad company at Americus a portion of the peas which it had agreed to sell Bloom Sons, took a bill of lading for the same to its own order, and drew upon Bloom Sons for the price of the peas so delivered to the carrier, and attached the bill of lading to the draft; thus clearly showing that it understood that, under the contract, the peas were to be delivered at New Orleans. From the evidence of Albert Bloom, Bloom Sons evidently had a similar understanding.   It appearing that the contract which the petition sets forth, according to the construction placed upon it by both parties, meant that the peas were to be delivered at New Orleans, and the Americus Grocery Company, in making the point under consideration, admitting that the contract proved provided for delivery at New Orleans, it follows that there was no variance

between the contract set out in the petition and the one established by the evidence.    See *Erwin* v. *Harris*, 87 *Ga.* 333.

2. If the peas were to be delivered at New Orleans, then the amount of damages really sustained by the plaintiffs, by the failure of the defendant to make such delivery, was the difference between the contract price of the peas and their market value in New Orleans at the time they should have been delivered under the contract, less the freight from Americus to New Orleans.    *Erwin* v. *Harris*, supra.    We agree with counsel for the defendant that the plaintiffs submitted no evidence from which a jury could find the market price of the peas in New Orleans at the time for delivery. The correspondence forming the contract fixed no definite time for delivery; but we think it may be fairly inferred from the correspondence between the parties that delivery of all the peas was to be made within twenty days from the date of the contract.    There was no evidence whatever to show what the market price of the peas was at that time, or at any fixed time.    It is true that Albert Bloom testified that the plaintiffs had to pay $1.97–2 for peas, in open market, in New Orleans, on account of the Americus Grocery Company not furnishing the peas which it had contracted to deliver to them, but when such price was paid was not stated.    The evidence, therefore, did not authorize a finding for any actual damages.

3. The evidence, however, showed that there was a breach of the contract by the defendant, and the plaintiffs were, therefore, entitled to recover nominal damages.    Civil Code, § 3801.    This being true, a nonsuit should not have been granted.    While this court has frequently refused to reverse a judgment denying a new trial, simply to allow a plaintiff an opportunity to recover nominal damages, such a rule has never been applied to the grant of a nonsuit where the plaintiff was entitled to recover nominal damages.    *Howard* v. *Dayton Coal & Iron Co.*, 94 *Ga.* 416.    See also *Kenny* v. *Collier*, 79 *Ga.* 743; *Roberts* v. *Glass*, 112 *Ga.* 456.

*Judgment reversed.    All the Justices concurring, except Lumpkin, P. J., absent.*