*John R. L. Smith, Grady C. Harris,* contra.

---

## 12580. BRANDT *v.* BUCKLEY.

Where the purchase-price of corporate stock has been paid to the seller in advance, and he fails to make delivery in accordance with the contract, the general measure of damages recoverable by the buyer for the breach is the actual or market value of the stock at the time when and the place where delivery should have been made; and in an action for damages in such a case it is incumbent on the plaintiff to submit evidence as to such value.

This being such a case and there being no evidence of such value, the verdict for general damages was unauthorized.

DECIDED OCTOBER 24, 1921. REHEARING DENIED NOVEMBER 16, 1921.

Complaint; from Clarke superior court — Judge W. L. Hodges. May 28, 1920.

Application for certiorari was denied by the Supreme Court.

In November, 1915, Paul Buckley brought an action against

Rudolph Brandt to require the defendant to specifically perform a contract by delivering to him certain shares of corporate stock which he had purchased of the defendant, under the terms of a contract between them, executed January 10, 1914, for which stock he had on the date of the contract paid the defendant the agreed price. A copy of the contract was attached to the petition as an exhibit. It appears from the contract that Brandt, in consideration of $1,000 paid him by Buckley, " and other valuable consideration," sold to Buckley a third interest in two specified and numbered letters patent, together with a like interest in any subsequent patents or improvements, in connection with a certain computing cloth-measuring machine covered by the letters patent, and that might be made prior to the organization of a corporation for the purposes set forth in the contract. Brandt further agreed to organize, together with such persons as he might associate with him, a corporation for the purpose of· manufacturing and selling computing cloth-measuring machines under the patents referred to, and such other patents as might be granted to him in connection with such machine, and to sell and transfer to such corporation as might be so organized all of such letters patent, receiving from· the corporation in payment therefor such number of its shares of stock as might be agreed upon between him and his associates in the enterprise, and that when the shares of stock should be so issued to him he would transfer and assign to Buckley one third of the number of shares of such stock that might be issued to Brandt. The petition alleges that the defendant and his associates had a charter granted to them under the corporate name of the American Cloth Register Company, and that the corporation was duly organized and 4400 shares of the common stock and 400 shares of the preferred stock of the corporation were issued to Brandt, and 3,600 shares of stock in the corporation were held in the treasury as treasury stock. It is alleged that under the contract he is entitled to have transferred and assigned to him by the defendant one third of all the shares issued to the defendant, but that the defendant refused, on demand, to make such transfer. The main and substantial prayer of the original petition is for a decree requiring the defendant to specifically perform his contract by assigning or transferring to the plaintiff one third of the stock mentioned.

On the trial the petition was first amended as follows: " Petitioner alleges that by reason of the failure of the said Brandt to secure the additional patents for the improvements he had so made on said invention and to make formal transfers of the same to said American Cloth Register Company, as in equity and good conscience he was bound to do, the ownership of said patents and inventions by said company is uncertain and the value of the stock in said American Cloth Register Company is necessarily depressed, so as to make a recovery for the value of the stock to which plaintiff is entitled . . [a] wholly inadequate and insufficient measure of relief to petitioner. . . As hereinbefore alleged, the said Brandt is the owner of a majority of the stock in the American Cloth Register Company and he is likewise the president and general manager of the same, and absolutely controls and dominates the policy of said corporation. Said defendant is thus in a position to manipulate the affairs of said company to fit the exigencies of this litigation, and has exercised his power in the manner above stated so as to render the value of the stock in said corporation small, uncertain, and difficult of ascertainment. Petitioner further alleges that the value of said stock cannot be readily ascertained, as in the case of ordinary corporations, but that the same is of a peculiar character and its value is to a large extent prospective and dependent upon whether formal transfers of all patents, letters patent, and inventions which should have been made to it have been so made, and likewise dependent upon a successful and profitable operation of the business, which has not been attempted by said defendant. The conduct of said defendant Brandt with reference to said corporation has thus made uncertain and difficult of ascertainment the value of said stock, and petitioner's damages are irreparable, and the only fair and adequate relief that can be granted petitioner is the rendition of a decree for specific performance of said defendant's contract with the plaintiff as prayed." The testimony of the plaintiff tended to sustain the allegations of this amendment.

The plaintiff submitted no evidence as to the value of the stock, either common or preferred, and the only evidence tending to show its value at any time was the testimony of the defendant. He testified: " The last sales made of the stock of the American Cloth Register Company (the corporation whose stock is here involved)

were made in September, 1918. I don't know exactly how many shares were sold, but I think about ten or twelve. The par value of the stock is $100 per share, and this stock was sold at the rate of $75 per share for the preferred stock. The common stock has never been sold. No price has ever been put on it." After the defendant had so testified a second amendment to the petition was made, as follows: "The defendant having in his pleading and testimony in the court shown that he has by voluntary act of his own transferred and assigned to others 440 shares of the common stock in the American Cloth Register Company and 40 shares of the preferred stock in said company, which stock the plaintiff alleges he was entitled to have transferred to him under the contract sued on, and the defendant's counsel contending that a decree for specific performance of said contract could not be decreed for the reason that the plaintiff [the defendant?] has by the transfer of said stock put it out of the power of this court to enter any decree for specific performance, and plaintiff's counsel having taken the further position that a decree could not be enforced against the defendant for the reason that since the filing and service of the petition and process the defendant has voluntarily removed his domicile to the State of Connecticut and is now a resident of said State, the plaintiff now prays that damages be awarded him for the breach of said contract, and that the plaintiff be awarded as such damages the sum of $15,666.66, being the value of 146-2/3 shares of the common stock in said company at the value of $100.00 per share and 13-1/3 shares of the preferred stock of said company at $75.00 per share." The action having been converted by amendment into one for the recovery of damages for the failure of the defendant to deliver the corporate stock in pursuance of the contract set forth in the petition, a verdict was rendered in favor of the plaintiff for $15,666.66, which was the specific amount of damages prayed for in the amendment of the plaintiff quoted above. The defendant moved for a new trial on the ground that the verdict was contrary to the evidence and without evidence to support it; and upon the overruling of the motion he excepted.

　　*Green & Michael,* for plaintiff in error.
　　*Erwin, Erwin & Nix,* contra.

HILL, J. (After stating the foregoing facts.) This suit as finally framed by amendment was for damages on account of the breach of a contract for the delivery of certain corporate stock for which the plaintiff had paid the defendant. There was evidence to establish the contract and its breach by the defendant. The vital point is whether there was any evidence authorizing the jury to find that the amount of their verdict in favor of the plaintiff represented the damages recoverable under the law for the breach of the contract. The general rule is that the measure of damages recoverable of the seller for failure to deliver goods sold is the difference between the contract price and the market value at the time and place for delivery; and it is incumbent on one who seeks to recover such damages to submit evidence as to the market price at the time and place for delivery, in order to recover compensatory damages. In the absence of such evidence no actual damages can be recovered. To this general rule as to the measure of damages there are some exceptions. *Bloom* v. *Americus Grocery Co.*, 116 *Ga.* 784 (43 S. E. 54); *Sizer* v. *Mellon*, 129 *Ga.* 143 (7) (58 S. E. 1055); *Edwards* v. *Hale*, 129 *Ga.* 302, 304 (58 S. E. 817); *Hardwood Lumber Co.* v. *Adam*, 124 *Ga.* 821 (68 S. E. 725, 32 L. R. A. (N. S.) 192). This is the general rule where the purchase-price has not been paid. A contract for the sale of stock in a corporation is governed by substantially the same principles as a contract for the sale of any other personalty, both as to its formation and as to its construction and performance. 3 Clark and Marshall, Private Corp., § 608. And the remedies of the parties in the case of a breach of the contract for the sale of stock in a corporation are substantially the same as in the case of a contract for the sale of any other personal property. Id., § 615. The buyer's claim for damages for the failure of the seller to make delivery is ordinarily a claim for unliquidated damages; and the general measure of damages recoverable in such a case, if the price has been paid in advance, is the market value of the subject-matter of sale, because by reasonable diligence the subject-matter may be obtained by the buyer in the market at its market value. 24 R. C. L. 69, § 335. "In case of a nondelivery of stock in accordance with the contract, if the purchase-price has been paid, the general measure of damages is the actual or market value of the stock at the time when delivery should have been made, or, in

other words, at the time of the breach of the contract." 14 C. J. 717, § 1097, and cases cited in note 58. Where the buyer has paid the purchase-price, and " stands on the contract, as by suing for its breach, he must be content if the law places him in the position he would have occupied if the contract had been performed. This it does by permitting the recovery of the market value of the property at the time and place when and where it should have been delivered." 2 Sutherland Damages (4th ed.), § 656, notes 75 and 76. In *Bank of Culloden* v. *Bank of Forsyth,* 120 *Ga.* 575 (48 S. E. 226, 100 Am. St. R. 115), it was held that the measure of damages for the failure of a bank to make a transfer on its books and to issue a certificate therefor of stock in the bank owned by a purchaser is the value of the stock at the time of the demand and refusal to transfer and issue the certificate.

There was no exception to the charge of the court in the instant case, and it is not in the record. We therefore assume that the court instructed the jury that the rule for the recovery of damages in the case was that which we have stated. There was no evidence tending to show the market value of the corporate stock at the time the defendant contracted to deliver it to the plaintiff. As set forth in the preceding statement of facts, the only evidence tending to show the value of the stock at any time was that of the defendant, who testified: " The last sales made of the stock of the American Cloth Register Company (the corporation whose stock is here involved) were made in September, 1918. I don't know exactly how many shares were sold, but I think about ten or twelve. The par value of the stock is $100 per share, and this stock was sold at the rate of $75 per share for the preferred stock. The common stock has never been sold. No price has ever been put on it." This evidence tended to show the value of the preferred stock in September, 1918, when the *last* sales of it were made, more than four years after the contract was executed, and nearly three years after the institution of this suit, and of course nearly three years after the breach of the contract. This evidence, therefore, threw no light on the value of the preferred stock at the time the defendant should have delivered it under the contract, nearly three years previously. According to the evidence there was no market value for the common stock at the time the defendant agreed to deliver it, nor at any other time, as none of it had

ever been sold, nor had any price ever been "put on it." Even if, in the absence of evidence of actual sales, the par value of paid-up stock is presumptively its market value, no such rule could apply in the case at bar, in view of the allegations of the first amendment made to the petition, which the plaintiff's evidence tended to sustain, to the effect that by certain acts of the defendant the value of the stock was greatly lessened even from the organization of the corporation. So if the par value was $100 per share, its value was greatly depressed by the alleged acts of the defendant. It was therefore incumbent upon the plaintiff to establish the actual value of the common stock at the time the defendant agreed to deliver it, by showing the property of the corporation as compared with its liabilities, or its dividend-earning capacity at that time. 14 C. J. 718, § 1099. There was no such evidence.

We confidently conclude that there was no evidence to authorize the verdict rendered for $15,666.66 as damages for the defendant's breach of contract, and the court therefore erred in refusing a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*