# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

# MARCH TERM, 1925.

---

## TURNER *et al. v.* CHAMBERS *et al.*

Under the facts of this case the court below did not err in construing the contract to be one between debtor and creditor, and the deeds, though absolute on their face, to be merely a security for debt. Nor did the court err in overruling the demurrers and entering a decree based on the above conclusion, nor in overruling the motion for a new trial.

No. 4446. MARCH 11, 1925. REHEARING DENIED APRIL 20, 1925.

Equitable petition. Before Judge Bell. Fulton superior court. June 21, 1924.

Asa G. Candler and Malcolm E. Turner brought an equitable petition against Aldine Chambers, I. E. Wilcox, W. W. Wallace, Henry and Walter Poss, to recover certain described land and for injunction. Wallace and Poss filed an answer in which they averred that they were tenants of Chambers and Wilcox, and that they claimed no interest in the land. Chambers and Wilcox filed separate answers and general demurrers to the petition. In their answers they averred, that Candler entered into a certain contract with them by which he was to buy the land in controversy and re-sell it to them; that Candler recognized the contract in some respects, but breached it by refusing to accept an offer they had secured for the sale of a portion of the land, and told the defendants

to rest easy and wait until financial conditions improved, when they could pay him the money due. Chambers and Wilcox, who were in possession of the land at the time of the contract, denied committing waste upon the land. The plaintiffs also filed general demurrers to the answers. The defendants filed an amendment to their answers, averring in substance that the transaction was in reality a loan from Candler to them, which was evidenced by the written contract, and that the title to the land was taken in the name of Candler to secure the money loaned. To this amendment the plaintiffs demurred both generally and specially. On the hearing the defendants demurred to the petition, and the plaintiffs' demurrers to the defendants' original answers and their special demurrers to the amendment were not insisted upon. After argument the court overruled plaintiffs' general demurrers to the amendment and to the answers as amended, and that judgment is assigned as error. The case was then submitted to the court without the intervention of a jury, upon an agreed statement of facts, which is in substance the following: Chambers and Wilcox, desired to purchase the land in controversy, but were unable to do so. At their request Candler purchased the land, and the title deeds were executed and delivered to him. At the date of the contract and delivery of the deeds to Candler the defendants went into possession of the land and have been in possession continuously since. One tract of the land was purchased on October 9, 1918, another on September 23, 1919, and a third on October 1, 1919. On October 2, 1919, the contract, which was prepared by the defendant Chambers, was executed. This contract, among other things, provided that the defendants should have an option to sell the land at any time before January 1, 1921, and that if they failed to do so by that time all their rights under the contract should be at an end, time being of the essence of the contract. In December, 1920, Candler upon no new consideration (unless the payment of taxes, after Candler had declared all rights of the defendants at an end, can be considered as a new consideration), orally agreed to extend the time limit in the contract, but no definite extension of time was agreed upon. In December, 1921, Candler verbally called upon the defendants to pay the amount specified in the contract, which was not done. In December, 1922, after Candler had sold the land to Malcolm E. Turner, the defendants approached

Candler's attorneys with the statement that they desired to pay the amount stipulated in the contract, but it was declined. Formal tender of the amount was made in May, 1924, which was refused. The defendants placed no permanent improvements on the land. Turner holds a bond for title from Candler.

The court rendered a judgment to the effect that Candler held legal title to the land as security for a loan, specifying the amount of the loan, and entered judgment accordingly. The plaintiffs moved for a new trial, which motion was overruled, and to this judgment, as well as the judgment overruling their general demurrers, the plaintiffs excepted. The material parts of the contract referred to above are as follows (omitting the recital of the purchase by Candler of the property and the description of the same) :

"Whereas the said several sums above set out were paid out by said first party at the request and for the benefit of said second parties, who desired to buy the said several pieces of property and induced the said party of the first part to buy same for them, and they desire to repay him said money out of the proceeds of the sale of the lands, the lumber and wood taken from the same, and the rents of the property or so much of same as may be rented: Now, therefore, it is mutually agreed between said several parties as follows:

"1. Said second parties will continue to operate a sawmill or sawmills and to have cut and hauled and shipped to market the wood on said property, and will turn over to said first party, from time to time, the proceeds of said sales after paying expenses thereof, which said amounts shall be allowed as credits on said indebtedness above set out.

"2. Said second parties will also turn over to said first party the net proceeds of rents received from tenants on said property or any part thereof for the year 1920.

"3. Said second parties will pay all taxes on said property and will pay interest on the loans to John Hancock Mutual Life Insurance Company, and Sessions Loan and Trust Company, as same become due, as well as pay the interest on the $4,000 due for the purchase of the Shippey loans above referred to.

"4. Said second parties agree to sell said land in whole tract or in several tracts between this date and January 1st, 1921, and agree that in the event they do not sell said property upon terms

satisfactory to the said first party by that date, that all their rights under the terms of this contract or any other contract relating to the purchase of said lands or any part of the same, and all payments made under the terms of this contract before that date, in the event payment in full is not made by that time, shall become the absolute property of the said first party, and be considered as payments for the trouble of financing said purchases, time being of the essence of this contract.

"5. The said first party agrees that he will allow said second parties to sell said land in whole or in part, within the time above specified, to wit, January 1st, 1921, upon terms and conditions satisfactory to him; and that in the event settlement is made of these matters according to this agreement by said date, that he will make deeds to said second parties or their assigns, and give due credit for the sums of money so paid him from time to time under the terms of this agreement.

"6. Any sale of lands made under this agreement shall be at prices mutually satisfactory; in no event shall any sale be made at a price less than the value the particular tract bears to the tract as a whole."

*Candler, Thomson & Hirsch* and *Jones, Evins, Moore & Powers,* for plaintiffs.

*Conyers & Wilcox* and *George P. Whitman,* for defendants.

HILL, J. (After stating the foregoing facts.)

A correct decision of the case turns upon the proper construction of the contract entered into between the parties in this case. Reaching a correct conclusion as to the meaning of the contract within the contemplation of the parties thereto is not without difficulty. The question presented for decision is, were the deeds executed to Mr. Candler to the land in controversy though absolute upon their face, a mere security for a loan? Under the facts of this case we are of the opinion that the court below properly held, in effect, that the transaction involved between the parties was a loan, and that the plaintiff, Candler, held legal title to the land as security for the money paid by him for the purchase of the land, to wit, the sum of $33,000, together with $11,927.33 interest, declaring a special lien on the land, and that upon the payment of the same to the plaintiffs, Messrs. Candler and Turner, they should have no further interest or title therein. The deeds held by Mr.

Candler, under all the facts of the case, had the effect of being security deeds against the land in controversy. It will be observed that the contract, which was executed the day after the last deed, declares that "whereas the said several sums above set out were paid out by said first party [Candler] at the request and for the benefit of said second parties [Chambers and Wilcox], . . and they desire to repay him said money." The contract also provides for the operation of a sawmill by Chambers and Wilcox, and the payment of any net profits derived therefrom to Mr. Candler, "which said amounts shall be allowed as credits on said indebtedness above set out." The contract also provides, "in the event settlement is made of these matters according to this agreement by said date, that he [Candler] will make deeds to said second parties or their assigns, and give due credit for the sums of money so paid him from time to time." The language quoted strongly tends to show that the parties to the contract at the time of its execution contemplated the relation of debtor and creditor. In construing a contract one of the rules of construction is that where its meaning is ambiguous or doubtful, that construction is to be put upon it that is given by the parties themselves at the time of its execution. See *Armistead* v. *McGuire,* 46 *Ga.* 232; *Ga. R. Co.* v. *Smith,* 83 *Ga.* 627 (3) (10 S. E. 235) ; *Bloom* v. *Americus Grocery Co.,* 116 *Ga.* 786 (43 S. E. 54). What, therefore, was the construction that the parties themselves placed upon this contract? On December 26, 1919, Mr. Candler, writing to Mr. Chambers, one of the defendants, stated, among other things, "I wish that you could get from the same source that you are obtaining the money with which to acquire this additional acreage, also enough that the same party may take up the loans that I have made you." And on April 14, 1920, Mr. Candler, writing to Mr. Chambers, inquired, "How about payments that are due on your indebtedness?" It seems, therefore, that Mr. Candler considered at that time the relation existing between him and Chambers and Wilcox as that of debtor and creditor.

But it is insisted that the language of the contract prescribing a time limit within which defendants could pay the debt and redeem the property, even if the deeds were to be construed as security deeds, operated as a forfeiture of defendants' rights after the expiration of the time limit, to wit, January 1, 1921. Forfei-

tures are not favored by our law. *Glover* v. *Central Investment Co.*, 133 *Ga.* 65 (65 S. E. 147). Besides, we are of the opinion that Mr. Candler *waived* his right to insist upon the time limit named in the contract, by reason of his failure to insist upon it at the time, and because of his conduct subsequently thereto. It is well settled in this State that notwithstanding time is of the essence of a contract, it may be *waived,* and a subsequent offer to fulfill the contract and urging a compliance with the contract by the party of the other part, instead of treating the contract as at an end, amounts to a waiver. *Jordan* v. *Rhodes,* 24 *Ga.* 478. See also *Moody* v. *Griffin,* 60 *Ga.* 460; *Chapman* v. *Ayer,* 95 *Ga.* 581 (23 S. E. 131). Mr. Candler, having failed to insist upon a forfeiture at the time specified in the contract, and having orally agreed that the defendants might have further time within which the loan could be paid, waived his right to insist later upon the forfeiture. See *King* v. *Lipsey,* 142 *Ga.* 832 (83 S. E. 957). The defendants have offered to pay the amounts claimed to be due under the contract. Undoubtedly they are indebted to Mr. Candler, or to his assignee, Mr. Turner, in the full amount of principal which the former has advanced "for their benefit," with interest. From the record it appears that the defendants have tendered and continue to tender the full amount due to the plaintiffs. We are of the opinion that the learned trial judge has correctly applied equitable principles to the facts of the case, and that there was no error in overruling the demurrers, or in entering the decree which he made, or in overruling the motion for a new trial. See *Doris* v. *Story,* 122 *Ga.* 611 (50 S. E. 348), where this court held: "Where A contracted with B for the purchase of a lot of land and paid the first installment, and C, at A's request, paid the balance of the purchase-money, and B, by A's direction, made C an absolute fee-simple deed to the land, it being agreed between C and A that C should hold the title as security for the payment by A to C of the sum paid by C, C got a good title subject to be divested only by the payment of the debt thus secured."

*Judgment affirmed. All the Justices concur.*