S93A0932, S93X0933, S93A1017, S93X1018. EICKHOFF v.
EICKHOFF (four cases).
(435 SE2d 914)

CARLEY, Justice.

In 1986, appellant-plaintiff Ms. Nancy Anne Eickhoff and appellee-defendant Mr. Bruce Frey Eickhoff were divorced in Pennsylvania. During the pendency of their divorce action, they had entered into a settlement agreement. This settlement agreement provided that, upon appellee's retirement, appellant was to "receive one-half of [appellee's] pension and social security benefits, to be paid to her within one week of the day or days on which he receives them." This settlement agreement was *not* incorporated into the final divorce decree. After the divorce, appellee moved to Georgia and, when he retired on December 31, 1989, he became eligible for monthly pension and social security benefits in the gross amount of $2,535. Through February of 1992, appellee paid appellant one-half of this gross amount.

When appellee ceased to pay one-half of his gross pension and social security benefits, appellant brought the instant action to enforce the settlement agreement. In her complaint, appellant alleged several counts setting forth both legal and equitable theories. Among appellant's theories were the following: specific performance by appellee of the settlement agreement; citation of appellee for being in contempt of the settlement agreement; domestication and "correction" of the Pennsylvania divorce decree so as to incorporate the settlement agreement therein; and, damages for appellee's breach of the settlement agreement. Appellee answered, asserting that the settlement agreement was void, and he also counterclaimed for alleged prior overpayments, asserting that, if the settlement agreement was not void, it obligated him to pay appellant only one-half of the net, rather than gross, amount of his pension and social security benefits.

Cross-motions for summary judgments were filed. The trial court, after conducting a hearing, held that the settlement agreement imposed a valid contractual obligation upon appellee to pay appellant one-half of the gross amount of his pension and social security benefits, but that appellant was entitled to summary judgment only under a breach of contract theory. Accordingly, the trial court granted summary judgment in favor of appellant for arrearages to the date of judgment and granted summary judgment in favor of appellee as to most of appellant's other theories.

In Case No. S93A0932, appellant appeals directly from the trial court's grant of summary judgment in favor of appellee as to the theories of recovery other than breach of contract and, in Case No. S93X0933, appellee cross-appeals. In Case No. S93A1017, appellant appeals from the same order of the trial court pursuant to the grant

of her application for a discretionary appeal and, in Case No, S93X1018, appellee cross-appeals.

1. Since we are presented with *both* direct and discretionary appeals from the *same* order of the trial court, jurisdiction must be the topic of our initial inquiry.

Pursuant to OCGA § 5-6-35 (a) (2), appeals from judgments and orders in all "domestic relations" cases are discretionary. However, this court does not have jurisdiction over all "domestic relations" discretionary appeals. Under our Constitution, this court only has jurisdiction over "[a]ll divorce and alimony cases. . . ." Art. VI, Sec. VI, Par. III (6) of the Ga. Const. of 1983. The Court of Appeals has jurisdiction over all other "domestic relations" cases. Art. VI, Sec. V, Par. III of the Ga. Const. of 1983. Accordingly, unless the instant case can be deemed a "domestic relations" case in general, which also involves "divorce and alimony" in specific, we would have no jurisdiction over the discretionary appeals.

OCGA § 5-6-35 (a) (2) is applicable to appeals in "domestic relations" *cases*. If the *sole* issue to be resolved on appeal concerns "domestic relations," the appeal is clearly from a "domestic relations" *case* and must be taken to the appropriate appellate court pursuant to OCGA § 5-6-35 (a) (2). If, however, *additional* issues which would otherwise be directly appealable are also to be resolved on appeal, the appeal is *not* from a "domestic relations" case. Under those circumstances, the case is *directly* appealable to the appropriate appellate court and the "domestic relations" issue can then be raised pursuant to OCGA § 5-6-34 (d). Under that statutory provision, a "domestic relations" issue "may be reviewed on direct appeal, when it is appealed as part of a judgment that is directly appealable. [Cit.]" *Haggard v. Bd. of Regents*, 257 Ga. 524, 526 (4) (a) (360 SE2d 566) (1987).

The instant case raises a "domestic relations" issue *only* insofar as appellant sought domestication and "correction" of the Pennsylvania *divorce decree. Lewis v. Robinson*, 176 Ga. App. 374 (336 SE2d 280) (1985). Appellant's remaining claims are all based upon the *unincorporated settlement agreement* and no "domestic relations" issue is raised by those claims. *Scott v. Mohr*, 191 Ga. App. 825, 826 (1) (383 SE2d 190) (1989). Although the settlement agreement was made in contemplation of divorce, appellant's and appellee's status as former spouses is not material to their rights and obligations thereunder and the law of divorce and alimony is not material to a determination of those rights and obligations. Accordingly, insofar as appellant sought a recovery based upon the settlement agreement, the instant case is simply a contract action in which the parties thereto happen to be former spouses.

Although it had its roots in the parties' divorce action, [ap-

pellant's instant] action [based upon the settlement agreement] was a new action and not merely a continuation of the divorce action. For this reason, [OCGA § 5-6-35 (a) (2)] does not apply to this situation, and [appellant's] direct appeal [from the grant of summary judgment on her claims based upon the settlement agreement] is proper. ·

*Larimer v. Larimer*, 249 Ga. 500 (292 SE2d 71) (1982).

The instant case is, therefore, a hybrid, raising one "domestic relations" issue which is subject to OCGA § 5-6-35 (a) (2) and several other non-"domestic relations" contract issues which are not subject to OCGA § 5-6-35 (a) (2). The sole "domestic relations" issue is one which would normally be within the jurisdiction of the Court of Appeals, as it involves "a suit on a foreign judgment, not a divorce or alimony case within the meaning of our Constitution. . . ." *Lewis v. Robinson*, 254 Ga. 378 (329 SE2d 498) (1985). Accordingly, if this were the *sole* issue to be resolved on appeal, the instant case could be deemed a "domestic relations" case over which the Court of Appeals, rather than this court, would have jurisdiction.

However, the existence of the *other* non-"domestic relations" contract issues prevent this case from being considered a "domestic relations" case which is otherwise subject to OCGA § 5-6-35 (a) (2). These non-"domestic relations" contract issues are directly appealable and jurisdiction over the direct appeal from the grant of summary judgment in favor of appellee as to appellant's claim for specific performance of the settlement agreement would be in this court. Art. VI, Sec. VI, Par. III (2) of the Ga. Const. of 1983. Pursuant to OCGA § 5-6-34 (d), jurisdiction over the trial court's rulings on all of appellant's remaining claims, including her "domestic relations" claim, would likewise be in this court. "[This] court will accept jurisdiction of *this* [direct] appeal of [the "domestic relations" issue] because jurisdiction of the [directly appealable specific performance] claim is in this court." (Emphasis in original.) *Haggard v. Bd. of Regents*, supra at 527 (4) (a).

Based upon the foregoing, we hereby dismiss the discretionary appeals in Case Nos. S93A1017 and S93X1018 and proceed to the merits of the direct appeals in Case Nos. S93A0932 and S93X0933.

### Case No. S93A0932

2. The trial court's grant of summary judgment in favor of appellee as to appellant's claim for specific performance of the unincorporated settlement agreement is enumerated as error.

"Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at

law would not be an adequate compensation for nonperformance."
OCGA § 23-2-130. Accordingly,

> [w]hen there is a mere breach of a personal contract, for
> which the defendant is liable in damages, and it is not shown
> that irreparable injury will result, unless the contract be spe-
> cifically performed, a Court of Equity will not decree such
> specific performance.

*Justices of Inferior Court v. Croft*, 18 Ga. 473 (1) (1855). The *only*
performance required of appellee under the settlement agreement is
to *pay* appellant one-half of his pension and social security benefits.
Since the legal remedy of a recovery of damages "is generally ade-
quate, a contract or agreement for the payment of money is not ordi-
narily specifically enforceable." 81 CJS 926, Specific Performance,
§ 94.

Appellant urges, however, that other jurisdictions, including our
sister state of North Carolina, have held that the legal remedy is in-
adequate, because it does not compel the obligor's future performance
and requires the obligee "to bring successive lawsuits to recover in a
piecemeal fashion the sums due. . . ." *Moore v. Moore*, 252 SE2d 735,
738 [4] (N.C. 1979). Thus,

> [t]he law is clear in North Carolina that if a husband does
> not perform his part of a valid separation agreement, which
> has not been incorporated into a court order, the wife may
> obtain from the court a decree of specific performance of the
> separation agreement which is enforceable through contempt
> proceedings. [Cits.]

*McDowell v. McDowell*, 284 SE2d 695, 696-697 [2] (N.C. 1981).

In Georgia, however, a trial court's authority to cite for contempt
is limited by the constitutional prohibition against "imprisonment for
debt." Art. I, Sec. I, Par. XXIII of the Ga. Const. of 1983. "The inhi-
bition of the Constitution applies to any and all imprisonment for
debt, irrespective of the period of its duration or the means whereby
it is accomplished." *Messenger v. State*, 209 Ga. 340, 341 (72 SE2d
460) (1952). Compare *Estes v. Estes*, 192 Ga. 94, 96 (14 SE2d 681)
(1941) (holding that non-compliance with a *judgment for alimony*
may be enforced against the *judgment* debtor by contempt "on the
theory that it is not for the enforcement of a mere debt but of a con-
tinuing duty of the husband to support his wife, in which society has
a substantial interest. [Cit.]" It follows that, in Georgia, an order of
specific performance as to a merely private debt in the form of an
*unincorporated* settlement agreement cannot be deemed to be a more
adequate remedy than an action at law for breach of contract dam-

ages, since that order cannot be enforced by contempt and would not obviate the necessity of the obligee's resort to successive lawsuits for the obligor's future breaches.

Other than the unavailing contention that an order of specific performance of the unincorporated settlement agreement can be enforced by contempt, appellant suggests nothing

> which would show that [she] has taken [herself] out of the general rule that "when there is a mere breach of a personal contract, for which the defendant is liable in damages, and it is not shown that irreparable injury will result, unless the contract be specifically performed, a Court of Equity will not decree such specific performance." [Cit.]

*Black v. American Vending Co.,* 239 Ga. 632, 633 (2) (238 SE2d 420) (1977). Accordingly, the trial court correctly concluded that appellant's legal remedy is adequate and correctly granted summary judgment in favor of appellee as to appellant's specific performance claim. Compare *Franklin v. Franklin,* 256 Ga. 61 (344 SE2d 230) (1986) (specific performance against a *judgment* debtor on an *incorporated* settlement agreement); *Carr v. Kupfer,* 250 Ga. 106 (296 SE2d 560) (1982) (specific performance of a contract *other* than for the payment of money); *Brooks v. Jones,* 227 Ga. 566 (181 SE2d 861) (1971) (specific performance against a *judgment* debtor on an *incorporated* settlement agreement).

3. Appellant enumerates as error the trial court's grant of summary judgment with regard to appellant's claim that appellee should be held to be in contempt of the settlement agreement.

Appellant urges that, under Pennsylvania law, a trial court would be authorized to cite appellee for being in contempt of the settlement agreement, notwithstanding the lack of incorporation into the final divorce decree. However, appellant's instant action was filed in Georgia, not in Pennsylvania. "According to established precepts, contract remedies are controlled by the place where the action is instituted — the lex fori. [Cit.]" *General Elec. Credit Corp. v. Home Indem. Co.,* 168 Ga. App. 344, 349 (2) (309 SE2d 152) (1983). As thoroughly discussed in Div. 2, a party who is in breach of a mere private contract to pay money is not, in this state, constitutionally amenable to a citation for contempt. Accordingly, the trial court correctly granted summary judgment in favor of appellee as to this claim.

4. The denial of summary judgment in favor of appellant as to her claim for domestication and "correction" of the Pennsylvania divorce decree is enumerated as error.

The Pennsylvania divorce decree was entered in 1986. It did *not* provide for alimony but, by its terms, merely granted a divorce to

appellant and appellee. Compare *Levine v. Seley,* 217 Ga. 384 (123 SE2d 1) (1961). Accordingly, the five-year statute of limitation provided in OCGA § 9-3-20 had run when, in 1992, appellant instituted the instant action to domesticate that decree. See *Watkins v. Conway,* 221 Ga. 374 (144 SE2d 721) (1965), aff'd 385 U. S. 188 (87 SC 357, 17 LE2d 286) (1966).

Moreover, even assuming that the statute of limitation had not run, we know of no authority for a Georgia court to "correct" a domesticated judgment of another state. OCGA § 9-11-60 (g) authorizes the *court of rendition* to correct "clerical" mistakes and errors which were made in *its* judgments. See *Knox v. Knox,* 243 Ga. 797 (2) (256 SE2d 777) (1979). "An application under [OCGA § 9-11-60 (g)] should be made to the court that rendered the judgment rather than to a court in which the judgment has been [domesticated]." 11 Wright and Miller, Fed. Practice & Procedure: Civil § 2855, p. 155. It follows that the trial court correctly denied summary judgment in favor of appellant as to her claim for domestication and "correction" of the 1986 Pennsylvania divorce decree.

## Case No. S93X0933

5. Appellee enumerates as error the trial court's grant of summary judgment in favor of appellant on her breach of contract claim, contending that the unincorporated settlement agreement is void and unenforceable against him.

Appellee relies upon the Employee Retirement Income Security Act (ERISA), which provides, in relevant part, that pension benefits "may not be assigned or alienated." 29 USC § 1056 (d) (1). However, ERISA has been construed as barring an assignment or alienation of pension benefits "*only* insofar as they prevent those benefits from being paid to [pension recipients]." (Emphasis supplied.) *Mackey v. Lanier Collection Agency &c.,* 486 U. S. 825, 836 (108 SC 2182, 100 LE2d 836) (1988).

> We think that both the words of the statute and the legislative history demonstrate Congressional intent to assure only that funds promised retirees by their private employers actually reach the retirees without being dissipated or diverted before they ever leave the hands of the [pension] plan's trustee.

*Brosamer v. Mark,* 561 NE2d 767, 769 (Ind. 1990). ERISA "is concerned not so much with what the beneficiary does with his pension checks or how they are spent but with whether those in charge actually deliver the benefits." *United Assn. of Journeymen &c. v. Myers,* 488 FSupp. 704, 712 [2] (M.D. La. 1980), aff'd 645 F2d 532 (5th Cir.

1981).

Thus, the instant settlement agreement may be an assignment or alienation of appellee's pension benefits such that appellant would be barred under ERISA from enforcing it against *appellee's former employer*. However, ERISA provides *appellee himself* with no defense to enforcement of his agreement to pay appellant one-half of his monthly pension benefits as "he receives them."

> Recognizing the disarray in private pension plans which caused many retirees to lose the benefits promised them, Congress adopted ERISA to preserve the integrity of pension plans. There is nothing to indicate that Congress intended to provide pension beneficiaries a shield against the legitimate demands of creditors. . . . We refuse to stretch ERISA to make [appellee] and other beneficiaries like him judgment proof. Consequently, we hold that 29 USC 1056 (d) (1) protects ERISA-qualified pension benefits . . . only until they are received by a beneficiary.

*Brosamer v. Mark,* supra at 771. It follows that the trial court correctly granted summary judgment in favor of appellant as to appellee's ERISA defense to the breach of contract claim.

6. Appellee further urges that, if the settlement agreement is not void, the trial court nevertheless erred in construing it as obligating him to pay appellant one-half of his gross, rather than net, pension and social security benefits.

"The duty to construe contracts is upon the court. [Cits.]" *American Cas. Co. v. Crain-Daly Volkswagen,* 129 Ga. App. 576, 579 (2) (200 SE2d 281) (1973). "The rules of law set forth in the Code with respect to the construction of contracts are framed for the guidance and direction of the courts." *California Ins. Co. v. Blumburg,* 101 Ga. App. 587, 591 (2) (115 SE2d 266) (1960).

> Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. [Cits.]

*American Cas. Co. v. Crain-Daly Volkswagen,* supra at 579 (2). See also *Travelers Ins. Co. v. Blakey,* 255 Ga. 699 (342 SE2d 308) (1986).

Appellee contends that, under the agreement, he is only obligated to pay appellant one-half of his pension and social security benefits "within one week of the day or days on which he *receives* them. . . ." (Emphasis supplied.) According to appellee, this evidences the mutual intent that he was only obligated to pay appellant one-half of the amount that he actually received. According to appellant, however,

the above quoted language merely establishes receipt by appellee as the onset of the time for his performance and does not otherwise qualify his contractual obligation to pay her one-half of his "benefits." In any event, it is undisputed that, for more than two years after his retirement, appellee himself construed his contractual obligation to be satisfied only by payment to appellant of one-half of his gross, rather than net, pension and social security benefits. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them. [Cits.]" *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962). See also *Turner v. Chambers*, 160 Ga. 93 (127 SE 610) (1925); *Asa G. Candler, Inc. v. Ga. Theater Co.*, 148 Ga. 188, 192 (5) (96 SE 226) (1918); *Bloom Sons v. Americus Gro. Co.*, 116 Ga. 784, 786 (1) (43 SE 54) (1902). "[T]he meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." OCGA § 13-2-4. Appellee having construed the settlement agreement as obligating payment of one-half of his gross pension and social security benefits and appellant having understood that to be the proper construction of the settlement agreement, it must be held to be the true meaning. See *Copenhaver v. United Amer. Invest. Co.*, 96 Ga. App. 562 (101 SE2d 203) (1957). This is entirely consistent with the law of Pennsylvania, where the settlement agreement was drafted and executed.

> "(The parties') interpretation is entitled to great, if not controlling, influence, and will generally be adopted and followed by the courts, particularly when the parties' interpretation is made before any controversy, or when the construction of one party is against his interest. [Cit.]"

*Z & L Lumber Co. v. Nordquist*, 502 A2d 697, 701 [5] (Pa. Super. 1985).

Since the settlement agreement is not ambiguous after application of the applicable rules of construction, it follows that the trial court correctly granted summary judgment in favor of appellant on her breach of contract claim.

7. For the reasons discussed in Divs. 5 and 6, the settlement agreement is neither void nor construable as obligating appellee to pay only one-half of his net pension and social security benefits. Therefore, appellee's remaining enumeration of error, which relates to his counterclaim for recovery of alleged overpayments, is without merit.

*Judgments affirmed in Case Nos. S93A0932 and S93X0933. Appeals dismissed in Case Nos. S93A1017 and S93X1018. All the Justices concur, except Hunstein, J., who concurs in part and dissents*

*in part.*

HUNSTEIN, Justice, concurring in part, dissenting in part.

Although I concur fully in the affirmance of the judgment in Case No. S93X0933, I cannot otherwise concur with the majority's opinion because I cannot agree with the majority that an agreement in which issues such as child custody, child support, and alimony are settled should be treated as a conventional business contract enforceable by an action on a debt in those instances where the parties failed to have the agreement incorporated into their divorce decree. The majority gives no weight to the subject matter of these agreements — indeed, it dismisses as merely serendipitous the fact that the parties to such agreements "happen to be former spouses," majority opinion at p. 500 — and instead focuses exclusively on whether or not an agreement was incorporated into a final judgment. I, however, cannot disregard the fact that these agreements, by resolving issues arising out of the dissolution of a marriage, involve matters over which we have heretofore required judicial review and supervision. See *Conley v. Conley,* 259 Ga. 68 (5) (377 SE2d 663) (1989) (trial court presented with agreement to be incorporated into decree not bound by provisions therein for the custody and support of minor children). To hold, as the majority does, that failure to submit an agreement for incorporation into a decree transforms the agreement into a conventional business contract that can be enforced by an action on a debt is to hold that settlement agreements resolving issues critical to the welfare of children and dependent former spouses can validly be executed and enforced without judicial scrutiny of the provisions therein, notwithstanding public policy considerations to the contrary.[1] Consistent with my dissent in *Carr v. Carr,* 263 Ga. 451 (435 SE2d 44) (1993) (even in incorporated agreements parties should not be able to avail themselves of self-executing provisions for child custody because such provisions preclude judicial review necessary to give due consideration to child's best interest), I must object to this clear and unavoidable consequence of the majority's holding.

Nothing in the cases cited by the majority supports the conclusion that settlement agreements arising out of a divorce are or should be enforceable in the same manner as conventional business contracts. In *Scott v. Mohr,* 191 Ga. App. 825 (383 SE2d 190) (1989) the unincorporated settlement agreement addressed solely the issue of payment for the wife's psychiatric care[2] and provided "by its express

---

[1] See, e.g., OCGA § 19-6-15 (a); *Pruitt v. Lindsey,* 261 Ga. 540 (1) (407 SE2d 750) (1991).

[2] The psychiatric-care payment agreement was one of two agreements executed by the divorcing parties: the other agreement was incorporated into the divorce decree.

terms [that it] was intended not to be a part of the court's judgment and decree." Id. at 826 (1). Based on its finding that the psychiatric-care payment agreement was "freely entered into by both parties, with a potential benefit to each," the Court of Appeals declined to find that the parties to the agreement violated any rule of law or public policy by taking this agreement *out* of a domestic relation situation so as to sound only as an action at law for a debt. Id. *Larimer v. Larimer*, 249 Ga. 500 (292 SE2d 71) (1982), also cited by the majority, is distinguishable in that it involved an action for equitable partition brought because use of the court's authority to compel compliance with an incorporated settlement agreement would not remedy the conflict between the parties. See also *Wallace v. Wallace*, 260 Ga. 400 (396 SE2d 208) (1990).

I agree with the holding in *Scott v. Mohr*, supra, that there is no public policy against allowing parties, when settling certain collateral issues arising out of the dissolution of their marriage, to contract voluntarily to treat these issues as unrelated to the divorce, where the parties expressly so provide. Such agreements would stand on the same basis as conventional business contracts and would not be classified as involving "domestic relations" issues. Id. But such is not the case with the agreement the majority would have Ms. Eickhoff enforce as a conventional business contract. The Eickhoffs executed their agreement to settle "matters relating to [the parties'] respective rights, duties and obligations arising from their marital status, including the matters relating to property division, alimony, custody, visitation, and child support." Although in this instance Ms. Eickhoff seeks to enforce only a provision regarding her share of Mr. Eickhoff's pension and Social Security benefits, the majority's opinion is not limited to such provisions but instead extends to any and all provisions in unincorporated settlement agreements.

Assuming the validity in Georgia of this unincorporated agreement,[3] the result of the majority's decision to include all provisions of unincorporated divorce settlement agreements in the same category as conventional business contracts will be to leave available to plaintiffs such as Ms. Eickhoff only unsatisfactory and inappropriate contract remedies; repeated breaches of these agreements will necessitate the filing of a suit every month to obtain payments provided for in the agreements.[4] Further, because the majority holds that these unin-

---

[3] Under Pennsylvania law, the majority's position would be moot pursuant to 23 P.S. § 3105, which provides that "whether or not the [divorce settlement] agreement has been merged or incorporated into the decree" the parties thereto can utilize the remedies and sanctions to enforce the agreement "to the same extent as though the agreement had been an order of the court."

[4] Although a parent is statutorily obligated to provide for the maintenance, protection and education of an unemancipated child, OCGA § 19-7-2, to the extent a divorce settlement

corporated agreements do not involve domestic relations issues, discretionary applications under OCGA § 5-6-35 (a) (2) to review each monthly judgment will no longer be required, so that the parties will have the right to appeal those judgments directly to the Court of Appeals. Although most conventional contract litigants are unlikely to pursue such a litigious course of action, given the frequency with which some parties refuse to abide by agreements that *have* been incorporated into divorce decrees, it cannot be denied that the majority's opinion now provides parties to unincorporated settlement agreements enormous opportunity to inflict the maximum amount of legal harm on each other.

Consistent with this Court's previous position that private settlement agreements involving issues such as child custody and support should be scrutinized by the trial court, *Conley*, supra, I would recognize that such agreements are an integral aspect of divorce proceedings, whether or not incorporated into a decree, and would accord them the same dignity as their incorporated counterparts. Because of the critical issues resolved by such agreements, I cannot agree with the majority that a technical failure by the parties to have such agreements incorporated into a divorce decree justifies surrendering judicial scrutiny of these agreements and accordingly, I must respectfully dissent.

DECIDED OCTOBER 25, 1993 —
RECONSIDERATION DENIED NOVEMBER 5, 1993.

*Rountree & Souther, George M. Rountree,* for appellant.
*Carl V. Kirsch,* for appellee.

agreement obligates a parent to provide items in excess of the statutory minimum, as in the agreement here requiring Mr. Eickhoff to provide support to an emancipated minor in college, such obligations could likewise be enforced only by periodic lawsuits.