## S97A1261. GERINER v. BRANIGAR ORGANIZATION, INC.

(489 SE2d 305)

CARLEY, Justice.

In 1972, The Branigar Organization, Inc. (Branigar) began development of a residential community known as The Landings. As an amenity of this development, Branigar built and operated various recreational facilities which, for a fee, it made available to residents. In 1975, Richard Geriner bought property in The Landings and, upon his payment of a $750 initiation fee and execution of a written membership agreement, Branigar granted him the right to use the recreational facilities. The agreement provided that Geriner's non-equity membership in Branigar's facilities terminated on the last day of the year in which he sold or transferred his property.

Geriner never sold or transferred his property, but, in 1989, Branigar sold the recreational facilities to The Landings Club, Inc. (Club). As the result of this sale by Branigar, Geriner and the other residents then holding non-equity memberships in the recreational facilities were given three options: 1) receive a $7,500 credit toward purchase of an equity membership in the Club; 2) receive a refund of the original initiation fee and lose the right to further use of the Club's facilities; or, 3) forfeit the original initiation fee and retain the right to use the Club's facilities through 1990. Geriner did not expressly elect any of these options, but he did continue to use the recreational facilities without purchasing an equity membership in the Club.

In 1990, a number of residents of The Landings, other than Geriner, filed suit, alleging Branigar's breach of their membership agreements granting them the right to use the recreational facilities until they sold or transferred their property. In that lawsuit, the residents sought damages or, in the alternative, specific performance of their membership agreements with Branigar. The trial court held that the membership agreements created licenses for the use of the recreational facilities and that Branigar had breached those agreements and thereby damaged each of the resident-licensees in the amount of $7,500.

In 1994, Geriner filed his own suit against Branigar, alleging a breach of his membership agreement and seeking damages or specific performance, as well as attorney's fees under OCGA § 13-6-11. Consistent with the rulings in the prior suit, the trial court granted summary judgment in favor of Geriner in the amount of $7,500 on his claim for damages and granted Branigar's motion for summary judgment as to Geriner's claims for specific performance and attorney's fees. Geriner appeals from that order of the trial court. This Court, rather than the Court of Appeals, has jurisdiction over this case, because the viability of Geriner's equitable claim for specific

performance is an issue to be resolved on appeal. See *Engram v. Engram*, 265 Ga. 804 (463 SE2d 12) (1995); *Coleman v. Coleman*, 265 Ga. 568 (459 SE2d 166) (1995); *Stephens v. Trotter*, 205 Ga. App. 497 (422 SE2d 568) (1992). Compare *Beauchamp v. Knight*, 261 Ga. 608 (409 SE2d 208) (1991).

1. Geriner enumerates as error the entry of summary judgment in the amount of $7,500 on his claim for damages. In an undisputed affidavit, a Club employee states that, in 1989, $7,500 was the cost of a non-equity membership of the type Geriner lost upon the termination of his original membership agreement with Branigar. According to Geriner, this statement constitutes no more than the unsubstantiated opinion of the affiant. However, the affiant's statement is based upon personal knowledge of the cost of a non-equity membership, and is not a mere unsubstantiated opinion as to the value of such a membership. *Van Voltenburg v. State*, 138 Ga. App. 628, 629 (1) (227 SE2d 451) (1976); *Jones v. Universal C.I.T. Credit Corp.*, 88 Ga. App. 24, 27 (3) (75 SE2d 822) (1953). Compare *Inman v. Trust Co. Bank*, 207 Ga. App. 605 (428 SE2d 805) (1993).

Geriner further contends that he is entitled to recover at least the amount that it would cost for him to obtain an equity membership in the Club. However, an equity membership in the Club would not be comparable to the non-equity license to use Branigar's recreational facilities which Geriner lost as the result of the termination of his original membership agreement. Thus, a calculation of damages based upon an equity membership in the Club, rather than a non-equity license to use the recreational facilities, would result in a windfall to Geriner. "Damages are given as compensation for the injury sustained and '(a)n injured party can not be placed in a better position than he would have been in if the contract had not been breached.' [Cit.]" *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 644 (1) (278 SE2d 182) (1981). Under the uncontroverted evidence of record, all that Geriner lost was a non-equity membership in Branigar's recreational facilities, and that type of membership was selling for $7,500 at the time of his loss. See *Southern Nursery Co. v. Montfort*, 29 Ga. App. 328, 329 (4) (115 SE 150) (1922).

2. Geriner asserts that it was error to grant summary judgment in favor of Branigar on his specific performance claim. Specific performance is authorized only when damages would not be adequate to compensate for the breach. OCGA § 23-2-130. Geriner's entitlement to legal relief is based upon Branigar's alleged breach of a license. A license is authorization by the owner of real property to do a particular act thereon, without the grant of any estate or interest therein. *Grant v. Haymes*, 164 Ga. 371, 377 (1) (138 SE 892) (1927). Thus, Geriner had no equity interest in Branigar's recreational facilities

and a breach of the license resulted only in the loss of a personal right to continued use of those facilities. Since Geriner had only a personal right to use Branigar's recreational facilities, monetary damages would be the appropriate remedy. See *Eickhoff v. Eickhoff*, 263 Ga. 498, 500 (2) (435 SE2d 914) (1993); *Justices of Inferior Court v. Croft*, 18 Ga. 473 (1) (1855). Moreover, because the recreational facilities were sold to the Club, a decree of specific performance authorizing Geriner's continued use of the facilities would be an ineffective remedy as against Branigar. See *Cummings v. Johnson*, 218 Ga. 559, 561 (4) (129 SE2d 762) (1963); *Tanner v. White*, 146 Ga. 338 (91 SE 59) (1916). Thus, the trial court correctly granted Branigar's motion for summary judgment as to the claim for specific performance.

3. Under the undisputed evidence of record, there was a bona fide dispute as to Geriner's entitlement to greater relief than that which was afforded to the other residents of The Landings in the earlier suit against Branigar. As discussed above, that bona fide dispute was correctly resolved in Branigar's favor. Accordingly, unless Branigar acted in bad faith, there can be no liability for OCGA § 13-6-11 attorney's fees. See *AAA Pest Control v. Murray*, 207 Ga. App. 631, 632 (3) (428 SE2d 657) (1993). The evidence shows that Branigar entered into the license with Geriner in good faith and complied with its terms for over a decade before selling the facilities to the Club. Upon that sale, Geriner was offered a $7,500 credit toward an equity membership in the Club. Although Geriner should have been offered an unqualified $7,500 for the termination of his membership in the recreational facilities, the undisputed evidence demanded a finding that Branigar did not act in bad faith. Consequently, the trial court correctly granted summary judgment on Geriner's claim for attorney's fees under OCGA § 13-6-11. See *McKenzie v. Mitchell*, 123 Ga. 72, 75 (1) (51 SE 34) (1905).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 1997.

*Calhoun, Sapp & Calhoun, Gregory V. Sapp*, for appellant.
*Bouhan, Williams & Levy, Leamon R. Holliday III*, for appellee.