S91A0596. PRUITT v. LINDSEY.
(407 SE2d 750)

Clarke, Chief Justice.

Alyce Ayn Pruitt and Frederick Lindsey are unwed parents of a minor child. Mr. Lindsey pled guilty to child abandonment in the State Court of Fulton County. In July of 1989, the court imposed and suspended a 12-month jail sentence and ordered Mr. Lindsey to pay child support. The court retained jurisdiction to amend, alter or modify child support. No appeal was taken. In September 1990, Ms. Pruitt filed an action in the Superior Court of Fulton County seeking to modify child support and to legitimate the child. The Superior Court dismissed the case, holding that only the father may bring an action to legitimate a child and holding that the mother must return to the State Court of Fulton County for a modification of child support. We granted this application for discretionary review.

1. Ms. Pruitt argues that the court erred in holding that her exclusive remedy for modification of child support is in the State Court of Fulton County. She asserts that she is entitled to bring a civil action for support and to have the amount of support calculated according to the guidelines set forth in OCGA § 19-6-15. We agree that the amount of support must be calculated according to the guidelines in OCGA § 19-6-15, but hold that Ms. Pruitt's exclusive remedy for modification is in the State Court of Fulton County.

When a defendant is convicted of child abandonment under OCGA § 19-10-1, the trial court is authorized to prescribe the terms and conditions for the support of the child and to suspend the defendant's sentence of incarceration on the condition that the defendant pay child support. OCGA § 19-10-1 (j) (1). If the defendant fails or refuses to provide support at any time during the child's minority, the court may order that the suspended sentence be served. OCGA § 19-10-1 (j) (2). The statute also provides for modification of the amount of support in accordance with the child's needs and the defendant's ability to pay. OCGA § 19-10-1 (j) (4).

The clear intent of this statutory scheme is to allow the court that heard the child abandonment case to retain jurisdiction over the issue of child support throughout the child's minority. The statute gives the trial court an important coercive tool — the suspended sen-

tence — to ensure that the parent provides support. See generally *Moody v. State*, 190 Ga. App. 91 (378 SE2d 375) (1989). Moreover, because the statute provides for the trial court that hears the abandonment action to set and modify child support, it would not make sense to involve another forum in determining the amount of support for the child.[1]

We have held, however, that the provisions for modification of child support found in OCGA § 19-10-1 are analogous to those found in OCGA §§ 19-6-17 and 19-6-18. *Hudson v. State*, 248 Ga. 397 (283 SE2d 271) (1981). We further hold that the guidelines for computing the amount of child support found in OCGA § 19-6-15 (b) and (c), known as the "Child Support Guidelines," are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support.

2. Ms. Pruitt next argues that the dismissal of her complaint for legitimation under OCGA § 19-7-22 violates constitutional guarantees of due process and equal protection. We disagree.

OCGA § 19-7-22 states that "[a] father of a child born out of wedlock may render the same legitimate by petitioning the superior court of the county of his residence. . . ." Under the plain language of the statute, the procedure applies only to fathers. It does not follow, however, that the mother or child are thereby denied any right under the law. Other statutes protect the rights of the mother and child. For example, OCGA § 19-10-1, the child abandonment procedure followed in this case, provides for a determination of paternity that is conclusive in all future actions. *Cummings v. Carter*, 155 Ga. App. 688 (272 SE2d 552) (1980). Once paternity is legally established,[2] the child is on equal footing with all other children. The child is entitled to have both parents provide for his or her "maintenance, protection, and education." OCGA § 19-7-24. The child is also entitled to inherit from either parent. OCGA § 53-4-4. In all respects, the rights of a child born out of wedlock are the same as a child born in wedlock once paternity has been established. In other words, that child is "legitimate" as far as the law is concerned.

In 1988, the legislature amended all sections of Official Code of Georgia so that children born to unwed parents no longer bear the designation "illegitimate." They are now simply referred to as children "born out of wedlock." This change was a wise one because any

---

[1] OCGA § 19-11-14, which provides that "[t]he right of a child born out of wedlock to receive such support is enforceable in a civil action, notwithstanding any other provision of law" is not to the contrary. Several civil procedures to *enforce* the child support award are available to the child, although the only procedure available to *modify* the support award is in the court that heard the child abandonment proceeding.

[2] We do not address here the limited situations where biological paternity does not correspond with a duty to support, as in cases of artificial insemination.

illegitimacy in these circumstances has to do with the relationship between the parents and certainly not with the character of the blameless child. In spite of this change, however, the statute providing for "legitimation" was not deleted. This is so because the law provides that only the mother of a child born out of wedlock is entitled to custody of the child "unless the father legitimates him as provided in Code Section 19-7-22." OCGA § 19-7-25. Under the current legislative scheme, if a father wants to gain the right to custody or visitation, he must take the steps required by OCGA § 19-7-22 to "legitimate the child," or, more correctly, to legitimate the relationship between himself and the child.

Thus, if paternity has been established, the only rights affected by OCGA § 19-7-22, are the rights of the father. The Superior Court correctly decided that a complaint for legitimation under this section cannot be maintained by the mother.

*Judgment affirmed. All the Justices concur, except Smith, P. J., and Benham, J., who dissent.*

Smith, Presiding Justice, dissenting.

Words define our very being and the way in which we are viewed and treated by society. The power of this Court is the power of words; the way this Court uses words determines how citizens are regarded. As stated by Justice Weltner in his commencement address at Oglethorpe University, August 16, 1991:

> The Court commands and restrains public power and private interest. Yet, it has no sword and no purse. These belong to the executive and the legislature. How can the Court stay the hand of one, and void the act of the other? Because to the Court belongs the *word*. The sword may not be drawn, nor the purse filled or emptied, contrary to that word. The power of the Court is the power of words, as spoken from its bench and inscribed upon its writ. . . . A court that dispenses Justice alone, and is heedless of Truth and Mercy, forfeits its power. . . .

Heedless of Truth and Mercy the majority forfeits its power to protect this child and other illegitimate children by refusing to strike the statute as unconstitutional and erroneously declaring that the only rights affected by OCGA § 19-7-22 are the father's rights.

The law favors legitimating children when it "can be done with safety to society." *Harrison v. Odum*, 148 Ga. 489, 495 (96 SE 1038) (1918). When, as in this case, all reasonable doubt as to the father has been eliminated, there can be no threat to society to legitimate the

child, and yet this father refuses to legitimate his son.[3] The very important right of the child to be rendered legitimate is the issue, and under our statutory law, that exclusive power and control is in the hands of the father. OCGA § 19-7-22. A child born out of wedlock, despite a judicial order and decree giving the child the rights of a legitimate child, is still a "child who is not legitimate" within the meaning of OCGA § 19-7-20. Thus we have three potential classes of children: legitimate children, illegitimate children, and illegitimate children with most of the rights of legitimate children.

The public policy of this State has changed dramatically over the last few years; historically, the innocent child bore the stigma of his parents' illegal union by being labeled a "bastard." The father, who was necessarily engaged in an illegal act of fornication, adultery, or rape when the innocent child was conceived, was protected by the law while the innocent child was punished. The "bastard" was forbidden from using his father's name or inheriting from his father's estate.[4]

The "bastard" and the taxpayers bore the weight of the father's folly: The child wearing the cruel appellation, "bastard," and the taxpayers bearing the burden of financially assisting the single parent. The law is changing. The term "bastard" has been replaced with "child born out of wedlock," and both parents have the joint and several duty to provide for the maintenance, protection, and education of such children. OCGA § 19-7-24.

A child born out of wedlock is "not legitimate," OCGA § 19-7-23 (3), within the meaning of OCGA § 19-7-20, but he can be rendered legitimate if the "reputed" father subsequently marries the mother and "recognizes" the child as his own. OCGA § 19-7-20 (c). Alternatively, a child who is not legitimate may be "rendered" legitimate if his father files a petition in the Superior Court to legitimate his child. OCGA § 19-7-22. Thus the father has the exclusive right and power to determine legitimacy. Without the father's permission, no court can render an illegitimate child legitimate.[5] The most any court can do is to grant certain rights to the illegitimate child. It cannot declare legitimacy despite overwhelming evidence that the reputed father is the biological father. Similarly, the wishes of the child or of the mother mean nothing if the father refuses to legitimate the child.

The statute, OCGA § 19-7-22, should be declared unconstitutional because by granting the father the exclusive right to legitimate

---

[3] The appellee admits in his brief that he and Ms. Pruitt are the parents of the child. Paternity tests established a 98.43 percent probability of paternity. The appellee plead guilty to a charge of child abandonment and was ordered to pay child support.

[4] A child born out of wedlock is capable of inheriting from the mother in the same manner as a legitimate child. OCGA § 53-4-4 (b).

[5] This opinion does not address the effects of a decree of adoption, OCGA § 19-8-19, but only the rights of the biological father and the child.

his child, it simultaneously grants to him the exclusive privilege to deny his child the right to be called legitimate. In the present case, the appellant/mother asked the appellee/father to legitimate their son but the father refused. Now, the mother brings this action to legitimate their son, but the trial court and this Court assert that only the father can legitimate the child.

The majority sees this appeal as a distinction without a difference, but they have forgotten the power of the word. This child is, according to Georgia law, still an illegitimate child, OCGA § 19-7-23 (3), but now he has certain rights. Rights without the power of the words are only partial rights. Would the rights of black citizens have been considered complete if the law granted them the right to sit anywhere on public transportation while allowing the driver to announce each arrival and departure with a racial epithet? This case cries out for the Court to affirm the power of words; this Court must heed "Truth and Mercy."

I am authorized to state that Justice Benham joins in this dissent.

DECIDED SEPTEMBER 6, 1991.

*Alice F. Brown, Sims W. Gordon,* for appellant.
*Monroe Ferguson,* for appellee.