S94A0867. EHLERS v. EHLERS.
(449 SE2d 840)

THOMPSON, Justice.

We granted a discretionary appeal in this child support modification case to determine three questions: 1) Must a trier of fact, upon modifying an award of child support, enter written findings of special circumstances in order to deviate, up or down, from the child support guidelines of OCGA § 19-6-15 (b)? 2) In determining the amount of child support to be paid by an obligor, can the trier of fact give credit for payments other than direct cash child support payments (e.g., medical payments)? 3) In calculating the amount of child support one is obligated to pay, should the guideline percentages of child support found in OCGA § 19-6-15 (b) be applied to the total number of children that the obligor is legally obligated to support or only to the children for whom support is being determined in that action?

Chester and Suzanne Ehlers were divorced in 1989; custody of their two children was awarded to Suzanne. The final decree called upon Chester to pay child support in the amount of $2,000 per month and maintain medical insurance covering the children. Following his divorce, Chester remarried and fathered two more children. Chester and Suzanne's children spend a considerable amount of time (nearly 50 percent) visiting with Chester and his new family.

Chester was in the commercial real estate business. Between 1988 and 1992, his income declined steadily from a high of $99,632 to a low of $6,229.[1] In 1991, Chester sought a downward modification of child support. Following a hearing, the trial court found a substantial decrease in Chester's income and a substantial increase in Suzanne's income; it modified Chester's child support payments downward to $1,500 per month; it ordered Chester to continue to maintain medical insurance coverage for the children and to pay all medical and dental bills not covered by insurance. The trial court did not make a written finding of special circumstances in setting the modified child support payments.

1. [T]he guidelines for computing the amount of child sup-

---

[1] Chester acquired additional monies when he settled a lawsuit with his former employer. He averred that he grossed $62,000 and netted $27,000. Suzanne claims that Chester realized $127,000 when he settled the lawsuit and points out that, with the help of his wife and mother-in-law, he purchased a new home in November 1991 for $166,000.

port found in OCGA § 19-6-15 (b) and (c), known as the "Child Support Guidelines," are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support.

*Pruitt v. Lindsey*, 261 Ga. 540 (407 SE2d 750) (1991). The guidelines are to be applied in child support modification actions. *Riggs v. Darsey*, 260 Ga. 487 (396 SE2d 905) (1990). See also *Willingham v. Willingham*, 261 Ga. 674 (410 SE2d 98) (1991).

OCGA § 19-6-15 (c) permits the trier of fact to vary the final award of child support, beyond the range of the guidelines, "upon a written finding of special circumstances." This provision requires written findings whenever a trier of fact departs, up or down, from the guidelines. Our decision in this regard is bolstered by the 1994 amendment to the guidelines, effective July 1, 1994. It states that the guidelines create a rebuttable presumption that the amount of support awarded is correct and requires a written finding[2] to rebut the presumption in any particular case. OCGA § 19-6-15 (b); Ga. L. 1994, p. 1728. The finding "must state the amount of support that would have been required under the guidelines and include justification of why the order varies from the guidelines." Id.

Suzanne asserts that we must presume the trial court followed the law, see *Century 21 Mary Carr &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992), and that, therefore, the trial court must not have departed from the guidelines because it did not enter written findings. In this regard, she posits that the trial court must have determined that Chester's income was far more than he disclosed. This argument does nothing more than point out the need for written findings, especially in cases like this where the obligor's income is disputed. In the absence of such findings, it is difficult for a reviewing court to determine whether or not the guidelines were adhered to, or departed from. Accordingly, we urge the trial courts to enter written findings or specific findings on the record in *all* child support guideline cases. See OCGA § 19-6-15 (b).

We answer the first question affirmatively and remand this case for written findings in accordance with OCGA § 19-6-15 (b). Once such findings have been entered, either party can apply for appellate review.

2. The guidelines for computing the amount of child support found in subsection (b) of OCGA § 19-6-15 do not make allowance for payments other than direct cash child support payments made on behalf of the children. Thus, credit is not to be given for indirect pay-

---

[2] The amendment to OCGA § 19-6-15 (b) allows for a specific finding on the record in lieu of a written finding.

ments, e.g., medical costs or accident and sickness insurance premiums, when the child support award is calculated initially. In calculating an obligor's child support payment pursuant to OCGA § 19-6-15 (b), the trier of fact is only to look to the obligor's gross income and the appropriate percentage range. OCGA § 19-6-15 (b) (5).

Once the child support award is determined pursuant to the formula set forth in OCGA § 19-6-15 (b), the trier of fact can then vary the "final award," upon a consideration of "any factor which [it] deems to be required by the ends of justice." OCGA § 19-6-15 (c). A list of the factors warranting such variations is set forth in OCGA § 19-6-15 (c). It includes "medical costs," "educational costs," "extended visitation," and, pursuant to the 1994 amendment to the statute, "accident and sickness insurance coverage." Notably, the list is not all inclusive; it provides examples only. Nonetheless, OCGA § 19-6-15 (c) makes it clear that the trier of fact can give consideration to indirect costs paid by the obligor, e.g., health insurance premiums, in departing from the guidelines. We answer the second question affirmatively, but point out that indirect payments can be considered only to "vary the final award of child support . . . ." OCGA § 19-6-15 (c).

3. In determining the final child support award, the trier of fact can consider an obligor's "other support obligations to another household." OCGA § 19-6-15 (c) (6). Thus, the existence of other children may be considered in calculating the level of support. See *Batterson v. Groves*, 204 Ga. App. 52 (418 SE2d 373) (1992).[3] But this is not to say that the initial guideline calculation is to be made on the basis of "other support obligations." On the contrary, OCGA § 19-6-15 (b) makes it clear that the guideline calculation is to be "based on the number of children for whom child support is being determined." OCGA § 19-6-15 (b) (5). Thus, the guideline percentage is to be computed on the basis of the number of children for whom support is being determined in a particular case.[4] After that calculation is made, the final award can be adjusted on the basis of other children to whom the obligor owes support. OCGA § 19-6-15 (c) (6); see *Batterson v. Groves*, supra. We answer the third question with a qualified "no." The guideline percentage of child support found in OCGA § 19-6-15 (b) cannot be based upon the total number of children the obli-

---

[3] Although it would appear that the trier of fact in *Batterson* considered the obligor's other child in calculating the guideline percentage, it could not be said that the trier of fact erred, as a practical matter, since it was permitted to consider the other child in determining the final award.

[4] Policy considerations behind OCGA § 19-6-15 support this view. The statute was designed to protect children by providing minimum financial security. See 1984 U. S. Code Cong. & Admin. News 2397. This purpose would be frustrated if the guideline calculation were applied to the total number of children spawned by an obligor.

gor must support. However, the trier of fact can consider the obligor's other support obligations to vary the final award. OCGA § 19-6-15 (c) (6).

*Case remanded for further proceedings consistent with this opinion. All the Justices concur, except Hunstein, J., who concurs specially; Hunt, C. J., Sears and Carley, JJ., who concur in part and dissent in part.*

HUNT, Chief Justice, concurring in part and dissenting in part.

I agree with Justice Carley that a remand in this case is inappropriate because there is nothing indicating that the child support award is not within the guidelines of OCGA § 19-6-15 (b) (5). However, I would not go so far as to urge the General Assembly to require written findings in *any* case in which the guidelines may be applicable. The trial courts have long been able to perform their duty in this regard to allocate resources based on need and ability to pay. This duty is unchanged by the new statute, *Willingham v. Willingham*, 261 Ga. 674, 675 (410 SE2d 98) (1991); *Walker v. Walker*, 260 Ga. 442, 443 (396 SE2d 235) (1990), and we need not impose any additional requirements on the trial courts in performing this duty.

Accordingly, I concur in Divisions 2 and 3, and dissent to Division 1 of the majority opinion.

I am authorized to state that Justice Sears joins in this opinion.

HUNSTEIN, Justice, concurring specially.

Because of the importance placed by the legislature upon the consideration to be given the child support guidelines in OCGA § 19-6-15, *Pruitt v. Lindsey*, 261 Ga. 540 (1) (407 SE2d 750) (1991), the legislature provided for careful scrutiny of any variance therefrom by requiring "a written finding of the special circumstances" justifying the variance. OCGA § 19-6-15 (c).[5] Thus, I concur completely with the majority's holding in Division 1 recognizing the mandatory nature of the written findings requirement in all variance cases. I write specially, however, because I would go further than the majority in merely "urging" trial courts to enter written findings in *all* child support guideline cases. Rather, I would hold that, in order to give effect to the legislative intent that variance from the guidelines be carefully scrutinized, a requirement of written findings in all child support guideline cases must be imposed. This follows from the fact that, except in cases where the evidence is transcribed and is without conflict, in the absence of written findings there can be no scrutiny of the award, no determination whether or not the guidelines actually were

---

[5] As noted by the majority, its holding is consistent with the 1994 amendment to OCGA § 19-6-15 (b).

followed. Instead, the parties to the award will be left to ponder the bases for the award and the reviewing court will be obligated by legal presumptions to conclude from nothing that the amount of child support was properly calculated. A finding of "nothing," when combined with the presumption of regularity in judicial proceedings, completely undermines the importance placed by the legislature on the mandatory application of the guidelines and the careful scrutiny of any variances therefrom, a problem amply demonstrated by the facts of the instant case. Without imposing a requirement of written findings in all child support guidelines cases, the problem presented by this case will continue to occur and undermine the legislative intent behind OCGA § 19-6-15.

Therefore, while I agree that the case must be remanded to the trial court, I would do so in order to obtain written findings regarding the determination of appellant's income, the application of the guidelines to that income, and an explanation of what, if any, special circumstances were considered if variance from the guidelines was deemed justified.

I concur completely in Divisions 2 and 3.

CARLEY, Justice, concurring in part and dissenting in part.

I concur in Divisions 2 and 3 of the majority opinion. As to Division 1 and the consequent remand of this case to the trial court, however, I must dissent.

The guidelines for child support set forth in OCGA § 19-6-15 certainly must be *considered* by the trial court. In this case, the trial court did not make a written finding that, in making its award of child support, the guidelines had been considered. However, there is *no* statutory requirement that such a finding be made. The trial court also did not make a written finding that it was adhering to or deviating from the guidelines. By its unambiguous terms, however, the applicable provisions of OCGA § 19-6-15 (c) require a written finding only in the event that the final award is not within the range of the guidelines.

The problem in this case arises only because the amount of appellant-plaintiff Husband's income was in dispute and the trial court did not make a written finding of fact as to that issue. If a finding had been made as to Husband's income, only a simple calculation would then be necessary to determine whether the $1,500 per month awarded as child support was an amount within the applicable guidelines for two children. However, there is no *statutory* requirement that a trial court make a written finding as to the amount of income.

In my opinion, the General Assembly should be urged to amend OCGA § 19-6-15 so as to require that additional written findings be made in cases in which the guidelines are applicable. Until the enact-

ment of legislation imposing such an additional requirement, I agree that this court should encourage the trial courts to make additional written findings in all guideline cases. I do not agree, however, that this court should take it upon itself to require that such additional written findings be made in all guideline cases. In this case, the trial court heard the evidence as to Husband's income and awarded $1,500 per month as child support. In the absence of anything to the contrary, we must presume that that $1,500 is within the 23-28 percent of Husband's income that the guidelines specify for an award of support for two children. See *Century 21 Mary Carr &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992). Accordingly, I would affirm the trial court's order and must dissent to the remand for the trial court to make such written findings as the majority has judicially engrafted into the provisions of OCGA § 19-6-15.

DECIDED NOVEMBER 28, 1994.

*Adele L. Grubbs, B. Wayne Phillips,* for appellant.
*Lewis M. Groover, Jr.,* for appellee.