## A99A0016. GANNY v. GANNY.
(518 SE2d 148)

SMITH, Judge.

This case began as an action to establish paternity. We granted a discretionary appeal to address issues concerning the propriety of the trial court's entry of an order resolving questions of custody and domestic violence as well as the correctness of those and other rulings on their merits. We conclude that under the facts presented here, it was proper for the trial court to address the issue of custody and to enter a protective order. We also affirm the trial court's rulings regarding custody and visitation. But we conclude that the protective order was overbroad and the amount of child support ordered exceeds the guidelines established in OCGA § 19-6-15. We therefore vacate those portions of the order and remand the case to the trial court for the entry of a protective order consistent with this opinion and an order for child support in an amount consistent with the statute.

The record shows that Veronica Ganny and Austin Ganny were married and that they divorced in 1992. In that divorce action, Austin was granted custody of their son, Austin, Jr. (A. J.). Austin also had a daughter from a previous relationship, who lived with them while they were married. Another son, Malik, was born to Veronica after the divorce, in 1995. Austin saw Malik in the hospital on the day he was born, and that week he began paying Veronica $45 each week toward Malik's support by mailing checks to the address of Veronica's mother. The voluntary support payments continued until

December 1997, when Veronica's mother moved and her telephone was disconnected. Veronica then had Austin arrested for abandonment. Some time later, after Veronica had been abusive to his daughter, Austin filed a contempt action based upon Veronica's failure to pay the child support she was ordered to pay Austin for A. J., and thereafter she refused to let him see Malik.

Veronica filed this action against Austin, seeking to establish paternity of Malik. Austin answered and counterclaimed for legitimation and custody. Both parties believed that Austin was Malik's natural father, and when blood testing showed a 99.98 percent probability that this was true, the parties stipulated that Austin was Malik's biological father at the beginning of trial. The case was tried before a judge without the intervention of a jury, and both parties presented evidence. At the conclusion of the trial, the court entered an order legitimating Malik and granting custody of Malik to Austin and visitation to Veronica. The order also provided that Veronica was to pay child support for Malik in the amount of $50 per week and enjoined Veronica from harassing Austin or his family and from approaching Austin or his daughter closer than 50 feet, except during authorized visitations.

1. Veronica contends the trial court erred in addressing the issue of custody. She argues, correctly, that custody of a minor illegitimate child is in the mother alone prior to legitimation. OCGA § 19-7-25. Upon legitimation, the father has an equal right to custody, but prior to a judgment of legitimation the father has no standing to raise the issue of custody. And although legitimation creates standing for the father, it does not itself effect a change of custody. *Kennedy v. Adams*, 218 Ga. App. 120-121 (1) (460 SE2d 540) (1995).

Nevertheless, it is well established that "[c]onsideration of the issue of custody . . . is not precluded in a situation where that claim as well as legitimation is pending before the court by consent of the parties and there is jurisdiction of the parents, child, and subject matter in the court." *Gregg v. Barnes*, 203 Ga. App. 549, 551 (417 SE2d 206) (1992). Although Veronica now states she did not consent to a determination of custody, her complaint itself raised the issue by alleging she was "entitled to custody of" Malik and child support from Austin.

It is also apparent from the transcript of the trial that custody was very much in issue throughout the proceeding, and that both parties addressed this issue and presented evidence to support their competing claims. Austin presented evidence to show Veronica's unfitness, and Veronica, in turn, presented evidence to show that she was not unfit. We conclude, therefore, that the trial court correctly found that the parties had consented to adjudicate the issue of custody.

2. Relying on the holding in *Jones v. Jones*, 256 Ga. 742 (352 SE2d 754) (1987), Veronica also maintains that it was error for the trial court to entertain the counterclaim for custody because venue was improper. In *Jones*, the Supreme Court held that a noncustodial parent could not counterclaim for custody in an action to modify visitation rights brought by the custodial parent in the county of the noncustodial parent's residence. But the holding in *Jones* is based upon the provisions of OCGA § 19-9-23, which apply only "after a court has determined who is to be the legal custodian of a child," when a party seeks to change that determination. OCGA § 19-9-23 (a).

The provisions of OCGA § 19-9-23 are mandatory. But even when they apply, they are venue provisions, and venue may be waived. *Houston v. Brown*, 212 Ga. App. 834 (443 SE2d 3) (1994). Here, as in *Houston* and in *Daust v. Daust*, 204 Ga. App. 29 (418 SE2d 409) (1992), any challenge to venue was waived. Veronica consented to an adjudication of custody in her complaint and called witnesses on that issue. She made no objection to venue in the trial court until she apparently raised it during closing argument, after hearing the damaging evidence against her presented by Austin. The record does not include a transcript of closing argument, but it does show a colloquy in which Austin's attorney objected to Veronica raising any challenge to jurisdiction or venue at that point, at the end of the hearing. A defense of improper venue to a claim for relief in any pleading, whether a claim or counterclaim, must be asserted in the responsive pleading or by motion, or it is waived. OCGA § 9-11-12 (b) (3) and (h) (1) (B). When it announced its ruling to the parties, the trial court correctly concluded that Veronica had waived any such challenge.

3. Veronica asserts the trial court erred in awarding custody to Austin. But this court will not reweigh the evidence. "The comparative weight of the evidence relevant to the issue of the best interest of the child being appropriate for decision by the trier of fact, this contention clearly lacks merit. [Cit.]" *Kennedy*, supra at 122 (2).

Austin's daughter was about four years old when her father married Veronica. She testified that Veronica told her at once that she did not want her in her new home and locked her in the garage and the basement. The daughter testified that Veronica beat her and spanked her with a belt for no reason or for trivial reasons like losing her keys. Veronica testified she never did any of these things. But Austin's daughter once recorded a telephone conversation with Veronica, and the tape, which was played in court, showed that Veronica made numerous threats and admitted beating her and not wanting her.

Veronica was questioned about past behavior that allegedly displayed her violent temper, including one incident when she flew into

a rage about a tow truck bill and the police had to be called. In response, Veronica denied under oath that she lied to or kicked police officers. A police officer testified, however, that she did those things.

Veronica also denied that she pursued Austin and threatened him and his current girlfriend. But the tape of another recorded conversation revealed that she lied. She also attempted to have Malik believe that her current husband was his father.

The trial court found none of Veronica's testimony credible because of her repeated lying. The trial court concluded that she was "a person of great anger and potential for violence" who resorts to intimidation and terrorization when she does not get her way. The court also found that she had "made an affirmative effort to prevent Malik's natural father from having a relationship with him." Finding Austin to be the "virtual opposite" of Veronica, the trial court determined that it was in the best interest of Malik to award custody of him to Austin. The evidence did not demand a contrary finding.

4. Given the evidence at trial concerning Veronica's potential for violent outbursts and her attempt to create a substitute "father" for Malik, the trial court's award of supervised visitation for two hours every Sunday was not error. In deciding issues of custody and visitation, the best interest of the child must be paramount. In a bench trial, because the trial judge is the trier of fact, he or she has the exclusive right to determine the credibility of witnesses. To that judge falls the duty of observing the parties' demeanor and attitudes, hearing the evidence, and performing the "Solomonic task" of determining a child's fate with respect to two people with competing interests. See generally *Phillips v. Drake*, 215 Ga. App. 210, 211 (1) (449 SE2d 879) (1994). Unless the record indicates clearly that the trial court relied upon illegal evidence or shows legal error, we will not reverse. Id. In this case, the record does not reveal error, and we affirm the ruling.

5. Veronica alleges that the entry of a family violence protective order was error, because the trial court did not have jurisdiction over her and because a verified petition had not been filed, as required by OCGA §§ 19-13-3; 19-13-4 (a). We do not agree. As to personal jurisdiction, Veronica submitted herself to the jurisdiction of the court when she filed this action. Although no petition was filed, it is well established that "there is no magic in nomenclature. A document is to be construed by its substance or function, rather than by its name. [Cits.]" *Dolinger v. Driver*, 269 Ga. 141, 142 (1) (498 SE2d 252) (1998). Regardless of whether the order was denominated a family violence order, it was surely within the power and authority of the superior court, after hearing the evidence of Veronica's conduct, to enjoin her from approaching or harassing Austin and his family. See generally OCGA § 15-6-9.

The trial court's order provided as follows:

The court expressly enjoins Veronica Ganny Lamar from harassing the defendant or any member of his family. The court enjoins her from approaching closer than fifty feet to Pamela Ganny or Austin Ganny (defendant) except during times of court authorized visitation with AJ and Malik. This portion of this order is to be treated by law enforcement as a FAMILY VIOLENCE PROTECTIVE ORDER. Any violation of this order may be treated as aggravated stalking.

Although such equitable relief was within the trial court's power, we are concerned that the order states that unspecified future conduct will be deemed to fall within the ambit of a particular criminal statute. We therefore vacate that portion of the order specifying that any violation may be treated as aggravated stalking. We also find that because it lacks an expiration date, the order may be overbroad in duration, particularly given the trial court's order mandating counseling for Veronica. We therefore remand this case to the trial court for inclusion of an expiration date on this restriction.

6. We agree with Veronica that the trial court ordered her to pay child support for Malik in an amount that violates the guidelines set forth in OCGA § 19-6-15. These guidelines must be considered by any court setting child support, and a court may depart from the guidelines only upon a written finding of "special circumstances." OCGA § 19-6-15 (c). In this case, the award departed from the guidelines without such a written finding. We therefore vacate the award of child support and direct the trial court that upon remand child support be set within the guidelines set forth in OCGA § 19-6-15 (b) (5). In the alternative, the trial court is directed to enter written findings supporting a departure from the guidelines. See *Ehlers v. Ehlers*, 264 Ga. 668, 669 (1) (449 SE2d 840) (1994).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 18, 1999 — CERT. APPLIED FOR.

*Amelia G. Pray*, for appellant.
*Winn, Price & Winn, Frank C. Winn*, for appellee.