## A05A2064. PILCHER v. STRIBLING et al.

(630 SE2d 94)

ADAMS, Judge.

Terry Pilcher appeals from the trial court's entry of a permanent restraining order enjoining him from contact with the appellees, Jason Stribling and Carl Morrow, as well as certain named protected parties.

At the relevant time, Pilcher was the fire chief for the City of Loganville Fire Department. Stribling and Morrow, along with the protected parties,[1] Rex Wamer, Anthony Logan, James D. Davis, and Kenneth Durden, were all fire department employees and Pilcher's subordinates. In March 2004, Stribling and Morrow each filed separate verified petitions for stalking/temporary protective orders against Pilcher. On March 16, 2004, the trial court granted a Stalking Ex Parte Temporary Protective Order to Stribling, and the next day granted Morrow's petition, adding the protected parties to Morrow's order.

The evidentiary hearing in this matter was held on April 19, 2005.[2] Both Stribling and Morrow, as well as the protected parties and other witnesses, testified to various incidents of physical assault and repeated verbal abuse by Pilcher directed toward these and other employees of the fire department. The incidents of verbal abuse included cursing, threatening employees' jobs, and belittling employees' intelligence, personal life, weight, sexual inexperience or financial situation. Witnesses testified that these incidents involved most of Pilcher's employees and went beyond the typical interchange and banter among firemen. In one incident, Pilcher threatened a firefighter's job, and used two of his fingers on the edge of a garbage can to indicate that the firefighter was "going over that edge." All of these incidents occurred during working hours, and all but one[3] of the

---

[1] The original protective orders named four additional protected parties. Three of the parties moved to have the order dismissed as to them. Although it appears that these motions were not ruled upon separately, these individuals were not required to present evidence at the hearing. They either failed to testify at the hearing or indicated that they did not wish to be included under the order.

[2] The hearing was delayed for over one year due to numerous continuances, either sought by Pilcher or necessitated by his filing of various motions, including motions for recusal. We note that under OCGA §§ 16-5-94 (e) and 19-13-3 (c), the hearing on a petition for a stalking protective order should be held "in no case later than 30 days after the filing of the petition." But we find no error under the circumstances in this case where the delays and continuances were necessitated by Pilcher's requests and filings. "It is too late now for defendant to complain of action of the court which his own conduct produces." (Citations omitted.) *American Cas. Co. v. Crain-Daly Volkswagen*, 129 Ga. App. 576, 582 (5) (200 SE2d 281) (1973).

[3] In the one incident that occurred off the basketball court, Pilcher threw a tomato at protected party Davis's head just to make him angry.

incidents of physical assault occurred during the course of basketball games mandated as part of the employees' physical training requirement.

This physical contact involved at least four different employees, including Stribling and protected party Wamer. In the last of these incidents, Pilcher elbowed Stribling in the stomach/chest area after Stribling blocked Pilcher's shot during a basketball game. And at one point when Stribling bumped into Pilcher, Pilcher turned around and shoved Stribling with both hands. At that point, a lieutenant with the fire department intervened in an attempt to calm Pilcher down. But after Stribling blocked another of Pilcher's shots, Pilcher threw a basketball at Stribling's legs "as hard as he could." At that point, Stribling suggested that he just leave the game and complete his physical training in a different manner, but Pilcher responded, "no, the hell [you] won't," ordering him to stay and finish the game. After the lieutenant once again intervened, positioning himself between the two other men, Pilcher walked away, asking Stribling, if he was just that "f___ing stupid." The witnesses to this and other incidents testified that Pilcher's behavior, which sometimes included kicking and shoving other players, exceeded the physical contact typically involved in basketball games.

Stribling, Morrow and all but one of the protected parties testified that the incidents of abuse placed them in fear for their safety. They stated that they would not be willing to play another basketball game with Pilcher and some stated that they would be unwilling to work with him again. Pilcher presented no evidence at the hearing.

Shortly thereafter, the trial judge entered a permanent protective order against Pilcher restraining him, inter alia, from approaching within 500 yards of Stribling, Morrow or the protected parties.

1. Pilcher asserts that the trial court erred in granting the protective order because the stalking statute was not intended to cover a situation where a supervisor is verbally abusive and physically aggressive to employees on the job. But even if Pilcher's behavior fell within the prohibitions of the stalking statute, he asserts that OCGA § 16-5-92 exempts the statute from applying to a fire chief engaged in his work duties.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court." (Citations omitted.) *Alexander Properties Group v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006). Accordingly, we will not reverse absent an abuse of that discretion. Id. And as with protective orders under the Family Violence Act, it is not this Court's function "to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments. . . . The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment

if there is any reasonable evidence to support it." (Citations omitted.) *Buchheit v. Stinson*, 260 Ga. App. 450, 453 (2) (579 SE2d 853) (2003). See also *City of Atlanta v. Southern States Police Benevolent Assn. of Ga.*, 276 Ga. App. 446, 458 (4) (623 SE2d 557) (2005) (trial court manifestly abuses its discretion in granting permanent injunction without any evidence to support it and contrary to the law and equity). Moreover, we note that the standard for obtaining a stalking protective order is proof by a preponderance of the evidence. OCGA §§ 16-5-94 (e) and 19-13-3 (c).

To determine whether Pilcher's actions fall under the prohibitions of Georgia's stalking statute, it is useful to consider the context in which the 1993 legislation was adopted. During the late 1980s, public attention became focused on the crime of stalking following a series of widely publicized stalking cases in California. Nga B. Tran, A Comparative Look at Anti-Stalking Legislation in the United States and Japan, 26 Hastings Int'l & Comp. L. Rev. 445 (2003). When it became apparent that existing laws could not adequately address such behavior, the states reacted swiftly to enact separate anti-stalking laws. During the period from 1990 to 1993, all 50 states and the District of Columbia passed legislation that criminalized stalking. Three years later, the federal government followed suit when Congress outlawed interstate stalking. Shonah Jefferson and Richard Shafritz, A Survey of Cyberstalking Legislation, 32 UWLA L. Rev. 323, 328-329 (2001). After this initial rush of legislation, states began to recognize that these hastily drafted statutes sometimes failed to adequately protect stalking victims, and some states began to modify and broaden their statutes to provide more effective safeguards. Tran, 26 Hastings Int'l & Comp. L. Rev. at 452.

Georgia followed this pattern. The state adopted its first anti-stalking legislation in 1993, and the original statute defined stalking as following, placing under surveillance, or contacting "another person at or about a place or places without the consent of the other person for the purpose of harassing [or] intimidating the other person." Ga. L. 1993, p. 1535, § 1. " '[H]arassing and intimidating' " was defined as knowingly and wilfully placing another "in reasonable fear of death or bodily harm" either to the person or a member of his or her immediate family, "and which serves no legitimate purpose." Id. at 1535-1536.

But this legislation proved ineffective in deterring certain kinds of stalking behavior and in protecting victims from harm. Review of Selected 1998 Georgia Legislation, 15 Ga. St. Univ. L. Rev. 62, 65 (Fall 1998). The requirement that a victim be placed in fear of death or bodily harm, for example, excluded prosecution of those cases where a stalker's main intent was to exert control over, rather than to threaten or harm, the victim. Thus, a number of stalking cases were

dismissed where the victim could not prove the requisite level of fear. Id. at 65-66. In 1998, Georgia amended its statute in an attempt to provide more protection for stalking victims. Id. One change broadened the definition of "harassing and intimidating" to "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person *in reasonable fear for such person's safety . . . establishing a pattern of harassing and intimidating behavior*, and which serves no legitimate purpose." (Emphasis supplied.) OCGA § 16-5-90 (a) (1). The added requirement of a pattern of intimidating behavior was meant to offset the expanded definition of stalking, by helping to "avoid abuse of the system by people who overreact or become vindictive." (Footnote omitted.) Review of Selected 1998 Georgia Legislation, 15 Ga. St. Univ. L. Rev. at 66.

Turning to the facts in this case, it is apparent Pilcher's behavior does not fit neatly within the widely recognized categories of stalking.[4] Nevertheless, the issue before us is whether it fits within the behaviors prohibited by Georgia's amended anti-stalking statute. Here, the evidence supports a finding that Pilcher, within the statutory definition,[5] contacted the named parties without their consent for the purpose of harassing and intimidating them. The evidence demonstrated that Pilcher engaged in a knowing and wilful course of conduct that, with one exception, caused the named subordinates emotional distress by placing them in reasonable fear for their safety. Moreover, these actions established a pattern of harassing and intimidating behavior that served no legitimate purpose.

The one remaining element, that the course of conduct be directed at a specific person, was clearly satisfied with regard to Stribling, because the evidence showed repeated physical contact and verbal harassment directed toward him specifically. And we find that the evidence supported a finding that this requirement also was met as to Morrow and the other protected parties. Even though Pilcher did not physically assault each of these individuals, the stalking statute does not require physical contact, and the evidence showed that Pilcher engaged in a pattern of verbally abusing all of these parties, in a manner that exceeded the normal employer/employee discourse.

Thus, while we acknowledge that Georgia's stalking statute was not intended to address the problem of bad management and should not be invoked in the case of every disgruntled employee, we find that

---

[4] See Tran, 26 Hastings Int'l & Comp. L. Rev. at 459-462 (identifying five categories of stalking: erotomania, love obsession, simple obsession, vengeance and cyberstalking).

[5] "[T]he term 'contact' shall mean any communication. . . ." OCGA § 16-5-90 (a) (1).

the statute does apply where a supervisor so exceeds the bounds of legitimate employment activity that he engages in a pattern of verbal and physical abuse of his subordinates causing them to fear for their safety.[6]

This analysis is not altered by OCGA § 16-5-92, which exempts from Georgia's anti-stalking provision "persons engaged in activities protected by the Constitution of the United States or of this state" or "persons or employees of such persons lawfully engaged in bona fide business activity or lawfully engaged in the practice of a profession." We interpret this provision as intending to exclude from prosecution those individuals engaged in constitutionally protected activity, such as political protest, or individuals whose lawful business activities might fall within the purview of the anti-stalking statute, such as private investigators. See Review of Selected 1998 Georgia Legislation, 15 Ga. St. Univ. L. Rev. at 64. Because Pilcher's activity does not fall into either of these exempted categories, OCGA § 16-5-92 does not apply in this case.

Accordingly, we find that the trial court did not abuse its discretion in finding that the provisions of the stalking statute applied to the facts in this case. See *De Louis v. Sheppard*, 277 Ga. App. 768, 770 (1) (627 SE2d 846) (2006). But we find that it was error to include Davis as a protected party because he testified that he never feared for his safety, although he acknowledged that the other employees did have such fear. Because the elements of stalking were not established as to Davis, we reverse the grant of the protective order as it applies to him.

2. Pilcher also asserts that the trial court erred in denying his motions for recusal. During the course of the proceedings, Pilcher filed two separate motions seeking to recuse Judge Marvin Sorrells. In the first motion, filed March 24, 2004, Pilcher asserted that Judge Sorrells had engaged in extra-judicial conduct by calling the Loganville city manager to ask about Pilcher's employment status. This communication occurred in connection with the ex parte hearing on the firefighters' motion for protective orders. In accordance with Uniform Superior Court Rule 25.3, the case was reassigned to Judge Samuel Ozburn, for consideration of this motion. Following an evidentiary hearing, Judge Ozburn denied the recusal motion. His order

---

[6] It obviously would be preferable for an employer to implement procedures allowing an employee to seek redress for an abusive manager within the confines of the workplace, thus avoiding the necessity of invoking the protections of the stalking statute. No evidence was presented in this case as to whether the City of Loganville had such procedures in place, but there was evidence that Pilcher discouraged his subordinates from complaining to others within the city government about his behavior by saying that no one would believe the complaints or even by threatening that if they did complain, they would lose their jobs.

noted that the evidence at the hearing showed that Judge Sorrells had merely asked the city manager information-gathering questions as to whether Pilcher was still employed with the city and if he had taken anger management classes, but did not ask subjective questions as to why he was still employed. Judge Ozburn concluded that these questions were not improper, manifested no bias or prejudice and provided no basis for Judge Sorrells's impartiality to be questioned.

Pilcher filed a second motion for recusal on January 5, 2005, two days prior to a scheduled hearing date on the merits. That motion cited to an affidavit from Jason Ford, a fire department employee who had been involved in the ex parte hearing regarding the protective orders, but who later withdrew his name as a protected party in the case. The affidavit stated that Judge Sorrells had asked in the hearing whether Pilcher had gone to anger management classes and then related a story about an acquaintance who had attended such classes. Judge Sorrells asked the hearing participants whether it would anger city officials if he called to ask about Pilcher's situation. This motion prompted the reassignment of this matter to Judge John Ott, who dismissed the motion as untimely as it related to the situation addressed in the earlier recusal motion.

"We review the denial of a motion to recuse under an abuse of discretion standard." (Footnote omitted.) *Brown v. State*, 275 Ga. App. 281, 291 (6) (620 SE2d 394) (2005). As an initial matter, we note that Pilcher did not include a transcript of the hearing on the first recusal motion. "[I]n the absence of a transcript of the evidence, we must presume that the evidence supports the judge's findings." *Blue v. Blue*, 279 Ga. 550 (1) (615 SE2d 540) (2005). Moreover, both recusal motions addressed the judge's ex parte conversation with the city manager, which occurred in the context of the initial ex parte hearing in this case. And from the record before us, it appears Judge Sorrells initiated that conversation in an attempt to determine Pilcher's employment status to help in crafting a workable protective order. As the judge explained in his permanent order, "[t]he inquiry was made to simply find out exactly where the fire chief stood with the city so that a proper and meaningful court order could be written. It was clear that the chief had been removed from his duties as chief of the firefighters, thus the Court included a distance in its order to stay away from the petitioners and the protected parties."

Nothing in the record before us leads to "the inescapable conclusion that a reasonable person would consider Judge [Sorrells] to harbor a bias that affects his ability to be impartial. See *Kelly v. State*, 238 Ga. App. 691, 693 (1) (520 SE2d 32) (1999) (presumption that trial judge, acting as public official, faithfully and lawfully performs

duties)." *Turner v. State*, 280 Ga. 174, 176 (626 SE2d 86) (2006). Accordingly, we find no abuse of discretion in the denial of these orders.

3. Pilcher further asserts that the trial court's classification of some of the employees as protected parties violated OCGA § 16-5-94 by improperly relieving them of the statutory requirement of filing a verified petition. We find no error. The trial court had before it two separate verified petitions asserting the underlying facts in this case. Thus, the purposes and policy behind this statutory requirement were served, and we find that it was within the court's inherent power after hearing the pertinent facts to extend the protections of its orders to others adversely affected by Pilcher's actions. Cf. *Ganny v. Ganny*, 238 Ga. App. 123, 126 (5) (518 SE2d 148) (1999).

*Judgment affirmed in part and reversed in part. Smith, P. J., and Ellington, J., concur.*

DECIDED MARCH 29, 2006 —
RECONSIDERATION DENIED APRIL 14, 2006 — ▮▮▮▮▮▮▮

*Edwin Marger, Michael J. Puglise*, for appellant.
*Preston & Malcom, Paul L. Rosenthal*, for appellees.